# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE HON. JOHN R. ADAMS,

      Plaintiff,

  v.

                                        Case No. 1:17-cv-01894-ABJ

JUDICIAL COUNCIL OF THE SIXTH
CIRCUIT, *et al.*,

      Defendants.

---

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS ON GROUNDS OF MOOTNESS

JOSEPH H. HUNT
Assistant Attorney General

JENNIFER D. RICKETTS
Director
Federal Programs Branch

CHRISTOPHER R. HALL
Assistant Director
Federal Programs Branch

 */s/ M. Andrew Zee*
M. ANDREW ZEE
Trial Attorney (California Bar No. 272510)
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-6646
m.andrew.zee@usdoj.gov

September 19, 2018                         *Counsel for Defendants*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

LEGAL BACKGROUND ........................................................................................ 2

FACTUAL AND PROCEDURAL BACKGROUND................................................ 6

    A.    The Special Committee........................................................................ 7

        1.    Misconduct Related To The Show Cause Order........................ 8

        2.    Misconduct And Potential Disability In Refusing To Cooperate With The Investigation ................................................ 10

    B.    The Sixth Circuit Judicial Council's February 22, 2016 Order and Memorandum................................................................................ 13

    C.    The Judicial Conference Committee On Judicial Conduct And Disability .......... 15

    D.    This Lawsuit........................................................................................ 17

    E.    The Sixth Circuit Judicial Council's June 27, 2018 Order and Memorandum.................................................................................... 18

    F.    Defendants' Motions to Dismiss........................................................ 19

LEGAL STANDARD............................................................................................ 20

ARGUMENT ........................................................................................................ 20

    A.    There is no "reasonable expectation" that Defendants will require Judge Adams to undergo a mental health evaluation..................................... 22

    B.    The Judicial Council's withdrawal of the mandatory mental health evaluation has eradicated the effects of the alleged violation.............................. 24

CONCLUSION...................................................................................................... 26

# TABLE OF AUTHORITIES

**CASES**                                                                    **Page(s)**

*Am. Tort Reform Ass'n v. OSHA*,
  738 F.3d 387 (D.C. Cir. 2013) .................................................................. 25

*Ass'n of Am. Railroads v. U.S. Dep't of Transportation*,
  896 F.3d 539 (D.C. Cir. 2018) .................................................................. 25

*Chandler v. Judicial Council of the Tenth Circuit*,
  398 U.S. 74 (1970) ............................................................................... 3, 4

*Cierco v. Lew*,
  190 F. Supp. 3d 16 (D.D.C. 2016), *aff'd on other gounds sub nom*,
  *Cierco v. Mnuchin*, 857 F.3d 407 (D.C. Cir. 2017) ................................. 23

*Clarke v. United States*,
  915 F.2d 699 (D.C. Cir. 1990) .................................................................. 21

* *Coal. of Airline Pilots Associations v. FAA*,
  370 F.3d 1184 (D.C. Cir. 2004) ....................................... 21, 22, 24, 25

*Cty. of Los Angeles v. Davis*,
  440 U.S. 625 (1979) ................................................................................ 21

*Grant v. Dep't of Treasury*,
  194 F. Supp. 3d 25 (D.D.C. 2016) ............................................................ 6

*Hohri v. United States*,
  782 F.2d 227 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987) ...................... 20

*Honig v. Doe*,
  484 U.S. 305 (1988) ................................................................................ 23

*Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*,
  845 F. Supp. 2d 288 (D.D.C. 2012) .......................................................... 20

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................ 20

* *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial
  Conference of U.S.*,
  264 F.3d 52 (D.C. Cir. 2001) ......................................... 2, 21, 22, 23, 25, 26

*Nat'l Ass'n of Home Builders v. Salazar*,
  827 F. Supp. 2d 1 (D.D.C. 2011) .............................................................. 24

*Nat'l Black Police Ass'n v. D.C.*,
    108 F.3d 346 (D.C. Cir. 1997) ................................................................ 24

*Transwestern Pipeline Co. v. FERC*,
    897 F.2d 570 (D.C. Cir.1990) ................................................................ 21

*Tyson v. Brennan*,
    277 F. Supp. 3d 28 (D.D.C. 2017), *appeal filed*, No. 18-5033 (D.C. Cir. 2018) ...................... 6

*Weinstein v. Bradford*,
    423 U.S. 147 (1975) ................................................................ 22

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

28 U.S.C. § 331 ................................................................ 6

28 U.S.C. § 332 ................................................................ 3

28 U.S.C. § 351 ................................................................ 7

28 U.S.C. §§ 351-64 ................................................................ 1

28 U.S.C. § 351(a) ................................................................ 4

28 U.S.C. § 351(b) ................................................................ 4

28 U.S.C. § 351(c) ................................................................ 4

28 U.S.C. § 352(a) ................................................................ 4

28 U.S.C. § 352(b)(1) ................................................................ 5

28 U.S.C. § 352(b)(2) ................................................................ 5

28 U.S.C. § 352(b) ................................................................ 5

28 U.S.C. § 352(c) ................................................................ 5

28 U.S.C. § 353(a)(1) ................................................................ 5

28 U.S.C. § 353(a)(3) ................................................................ 5

28 U.S.C. § 353(c) ................................................................ 5, 14

28 U.S.C. § 354(a)(1)(A) ................................................................ 5

28 U.S.C. § 354(a)(1)(B) ................................................................ 5

28 U.S.C. § 354(a)(1)(C) ................................................................ 5

28 U.S.C. § 354(a)(2) .......................................................................................... 17

28 U.S.C. § 354(a)(2)(A)(i) ............................................................................. 5, 14

28 U.S.C. § 354(a)(2)(A)(ii) – (iii) ...................................................................... 5

28 U.S.C. § 354(a)(2)(B)(ii) ........................................................................... 5, 15

28 U.S.C. § 354(a)(3)(A) ...................................................................................... 5

28 U.S.C. § 357(a) ................................................................................................ 6

28 U.S.C. § 357(c) ................................................................................................ 6

6th Cir. JC&D Rule 14(b) .................................................................................... 14

JC&D Rule 1 ....................................................................................................... 14

JC&D Rule 3(h) ..................................................................................................... 7

JC&D Rule 3(h)(1) .............................................................................................. 13

JC&D Rule 3(e) ................................................................................................... 13

JC&D Rule 13(a) ................................................................................................. 14

JC&D Rule 20(b)(1)(D) ...................................................................................... 17

JC&D Rule 20(b)(1)(D)(ii) ................................................................................. 14

JC&D Rule 20(b)(1)(D)(v) ................................................................................. 15

JC&D Rule 20(c) ................................................................................................. 14

Act of Aug. 7, 1939,
    Pub. L. No. 299, 53 Stat. 1223 ........................................................................ 3

Act of June 25, 1948,
    Pub. L. No. 773, 62 Stat. 869 (codified at 28 U.S.C. § 332) .......................... 3

Judicial Councils Reform and Judicial Conduct and Disability Act of 1980,
    Pub. L. No. 96-458, 94 Stat. 2035 ................................................................... 4

U.S. Const. art. III, § 1 ......................................................................................... 2

Fed. R. Civ. P. 12(b)(1) ...................................................................................... 19

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 19

**MISCELLANEOUS**

*Administration of the United States Courts:*
   *Hearing on S. 188 Before a Subcomm. of the S. Comm. on the Judiciary,*
   76th Cong., 1st Sess (1939) ........................................................................................ 3

H.R. Rep. No. 96-1313 (1980)........................................................................................ 4

Kastenmeier, Robert W. et al.,
   *Report of the National Commission on Judicial Discipline & Removal,*
   152 F.R.D. 265 (Aug. 1993) ........................................................................................ 4

## INTRODUCTION

Defendants, the Judicial Council of the Sixth Circuit and the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States (JC&D Committee), respectfully request dismissal of this Complaint brought by Judge John R. Adams of the U.S. District Court for the Northern District of Ohio as moot.  Plaintiff's Complaint challenges the Judicial Council's authority to require him to undergo a mental health evaluation as part of its investigatory authority in judicial misconduct proceedings.  But a recent Judicial Council Order has rescinded the requirement that Judge Adams undergo a mental health evaluation, rendering Plaintiff's claims moot.

This case began when Judge Adams objected to the Judicial Council's Order that Judge Adams undergo a mental health evaluation as part of its investigation into a judicial misconduct complaint against Judge Adams.  In response to the judicial misconduct complaint against Judge Adams, and pursuant to the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351-64, a Special Committee of the Sixth Circuit Judicial Council undertook an investigation into Judge Adams's ability to perform his judicial duties.  As part of that investigation, the Judicial Council issued an Order and Memorandum requiring Judge Adams to undergo a mental health evaluation by an independent psychiatrist (the Judicial Council also issued a public reprimand against Judge Adams, which is not at issue in this case).  The JC&D Committee considered a petition for review by Judge Adams challenging the Judicial Council's Order that he undergo a mental health evaluation, and the Committee affirmed the Judicial Council's Order.  Rather than comply, Judge Adams filed this lawsuit in September 2017 as a collateral attack seeking to halt the process.

In June of 2018, following the JC&D Committee's decision affirming the Judicial Council's Order requiring Judge Adams to undergo a mental health evaluation, the Judicial

Council issued a subsequent Order and Memorandum.   The Judicial Council considered subsequent developments, including the absence of any additional misconduct by Judge Adams, and withdrew the requirement that Judge Adams submit to a mental health evaluation and discontinued any further investigation.  The Judicial Council indicated that it would dismiss the misconduct complaint as long as Judge Adams commits no further misconduct within a one-year period, which expires in June of 2019.

The Judicial Council's June 2018 Order moots Plaintiff's claims for relief and requires dismissal.  Based on the Judicial Council's June 2018 Order—and the absence of additional misconduct—there is no reasonable expectation that the challenged mental health evaluation will be re-imposed.  And there can be no dispute that the injury Plaintiff asserts—being made to submit to an allegedly unlawful mental health evaluation—has been rescinded by the Judicial Council's Order and Memorandum.   Indeed, the D.C. Circuit has concluded that dismissal on mootness grounds is warranted in the same statutory and factual context—*i.e.*, when a challenged remedial measure in a judicial misconduct proceeding is no longer in effect at the time of judicial review. *See McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 56-57 (D.C. Cir. 2001).  Because there is no longer a live controversy for this Court to adjudicate, Plaintiff's Complaint should be dismissed as moot.

## LEGAL BACKGROUND

The Constitution protects judicial independence through its guarantees of life tenure and undiminished salary during good behavior.  *See* U.S. Const. art. III, § 1; *McBryde*, 264 F.3d at 64. At the same time, though, all three branches of the Federal Government have long appreciated that judicial independence must be accompanied by some means of ensuring judicial accountability. *See generally Administration of United States Courts: Hearing on S. 188 Before a Subcomm. of*

*the S. Comm. on the Judiciary*, 76th Cong., 1st Sess. (1939).   Recognizing that judicial independence and accountability are not mutually exclusive, Congress has sought to further both goals by empowering federal judges to "put their own house in order."  *Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74, 85 (1970).

In 1939, at the urging of Chief Justice Hughes and others, Congress provided for the creation of a judicial council for each circuit.  *See* Act of Aug. 7, 1939, Pub. L. No. 299, ch. 501, 53 Stat. 1223, 1224.  The judicial councils were instructed to take "such action . . . as may be necessary" "[t]o the end that the work of the district courts shall be effectively and expeditiously transacted."  *Id.*  For their part, district judges were required "promptly to carry out the directions of the council as to the administration of the business of their respective courts."  *Id.*

Congress recodified these provisions in 1948, providing that "[e]ach judicial council shall make all necessary orders for the effective and expeditious administration of the business of the courts within its circuit," which "[t]he district judges shall promptly carry into effect."  Act of June 25, 1948, Pub. L. No. 773, ch. 646, § 332, 62 Stat. 869, 902 (now codified at 28 U.S.C. § 332); *see Chandler*, 398 U.S. at 99 (Harlan, J., concurring) (describing the 1948 amendment "as merely a change in 'phraseology,' embodying in new words the original understanding of the powers of the councils").

In *Chandler*, the Supreme Court confronted questions concerning "the scope and constitutionality of the powers of the Judicial Councils."  398 U.S. at 75-76.  Though the Court ultimately disposed of *Chandler* on other grounds, its decision established that the Constitution vests the judicial councils with the authority to effect the goals of the 1939 Act (as recodified in 1948).  *See id.* at 86 n.7 ("We see no constitutional obstacle preventing Congress from vesting in the Circuit Judicial Councils, as administrative bodies, authority to make 'all necessary orders for

the effective and expeditious administration of the business of the courts within [each] circuit.'")
(alteration in original).  Meanwhile, the Court observed that the 1939 Act was "not a model of
clarity in terms of the scope of the judicial council's powers or the procedures to give effect to
[judicial council orders]" and called for "[l]egislative clarification."  *Id.* at 85 n.6.

Congress ultimately responded to *Chandler* with the Judicial Councils Reform and Judicial
Conduct and Disability Act of 1980, Pub. L. No. 96-458, § 3, 94 Stat. 2035, 2036-40; *see* H.R.
Rep. No. 96-1313, at 7 (1980) (citing *Chandler*, 398 U.S. at 85).  Aiming "to improve judicial
accountability and ethics, ... and, at the same time, to maintain the independence and autonomy of
the judicial branch," the Act "create[d] a mechanism and procedures within the judicial branch of
government to consider and respond to complaints against Federal judges."  H.R. Rep. No. 96-
1313, at 1.  The formal complaint-resolution mechanism established under the Act would
supplement and reinforce existing informal means of addressing judicial conduct and disability.
*See, e.g.*, Robert W. Kastenmeier *et al.*, *Report of the National Commission on Judicial Discipline
& Removal*, 152 F.R.D. 265, 280 (Aug. 1993).

To that end, the Act permits any person to file a complaint with the clerk of a court of
appeals alleging that a federal judge in the circuit "has engaged in conduct prejudicial to the
effective and expeditious administration of the business of the courts" or "is unable to discharge
all the duties of office by reason of mental or physical disability."   28 U.S.C. § 351(a).
Alternatively, the chief judge of the circuit may "identify a complaint" on the basis of available
information.  *Id.* § 351(b).  Any complaint must be transmitted to the subject judge, *id.* § 351(c),
and "expeditiously review[ed]" by the chief judge, *id.* § 352(a).

After reviewing a complaint, the chief judge has two options: (1)  dismiss the complaint or
conclude the proceeding where there are no issues of fact or where corrective action has been taken

– 4 –

or intervening events make further action unnecessary, *id.* § 352(b)(1), (b)(2); or (2) appoint a "special committee" comprising himself or herself and an equal number of circuit and district judges "to investigate the facts and allegations contained in the complaint," *id.* § 353(a)(1).  The chief judge must provide notice of his action to the complainant and the subject judge.  *See id.* §§ 352(b), 353(a)(3).  If the chief judge dismisses the complaint or concludes the proceeding, an aggrieved complainant or subject judge may file a petition for review with the circuit's judicial council.  *Id.* § 352(c).  The denial of such a petition "shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise."  *Id.*

If the chief judge concludes that additional factfinding is necessary, the chief judge must appoint a special committee to "conduct an investigation as extensive as it considers necessary." *Id.* § 353(c).  The special committee then "shall expeditiously file a comprehensive written report thereon with the judicial council of the circuit," setting forth the committee's findings and recommendations for "necessary and appropriate action" by the judicial council.  *Id.*

Upon receiving the special committee's report, the judicial council "may conduct any additional investigation which it considers to be necessary," *id.* § 354(a)(1)(A), and either dismiss the complaint, *id.* § 354(a)(1)(B), or "take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit," *id.* § 354(a)(1)(C). Judicial council action may include censuring or reprimanding the subject judge, *id.* § 354(a)(2)(A)(ii)-(iii), or ordering that no further cases be assigned to the subject judge "on a temporary basis for a time certain," *id.* § 354(a)(2)(A)(i).  The judicial council may request the subject judge to voluntarily take early retirement, *id.* § 354(a)(2)(B)(ii), but may not "order removal from office" of an Article III judge, *id.* § 354(a)(3)(A).

Where a judicial council has acted following receipt of a special committee report, Section 357 of the Act authorizes a complainant or a subject judge to file a petition for review with the Judicial Conference of the United States through its Committee on Judicial Conduct and Disability. *Id.* §§ 331, 357(a).  Section 357(c) provides: "Except as expressly provided in this section and section 352(c), all orders and determinations, including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id.* § 357(c).

## FACTUAL AND PROCEDURAL BACKGROUND

The facts and procedural history of this case are described in the Order and Memorandum of the Judicial Council of the Sixth Circuit, *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (Feb. 22, 2016) ("JC Mem."), ECF No. 10-2, and the Memorandum of Decision of the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States, *In re Complaint of Judicial Misconduct*, C.C.D. No. 17-01 (Aug. 14, 2017) ("JC&D Comm. Mem."), ECF No. 10-2.  Relevant factual developments since the filing of the Complaint are described in the Order and Memorandum of the Judicial Council of the Sixth Circuit,  *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (June 27, 2018) ("June Order"), attached and *available at* http://www.opn.ca6.uscourts.gov/internet/judicial_complaints/files/2013/06-13-90009.MO.pdf (last visited Sep. 19, 2018).[1]

---

[1] The February 22, 2016 Order and Memorandum and the August 14, 2017 Memorandum are subject to judicial notice and incorporated into the Complaint, and therefore may be considered by the Court.  *See, e.g.*, *Tyson v. Brennan*, 277 F. Supp. 3d 28, 34 (D.D.C. 2017), *appeal filed*, No. 18-5033 (D.C. Cir. 2018); *Grant v. Dep't of Treasury*, 194 F. Supp. 3d 25, 28 n.2 (D.D.C. 2016). While it could not have been incorporated into the earlier-filed Complaint, the June 27, 2018 Order and Memorandum is referenced in Plaintiff's prior filings, *see* Pl.'s Opp'n to Mot. to Dismiss, ECF No. 17 at 1 n.1, and is also subject to judicial notice.

A.        The Special Committee

On February 15, 2013, four judges of the U.S. District Court for the Northern District of Ohio filed a judicial misconduct complaint against their colleague, Judge Adams.  *See* JC Mem. 2. Their complaint focused primarily on Judge Adams's decision to issue an order directing a magistrate judge to show cause why the magistrate judge should not be held in contempt for missing a deadline set by Judge Adams in a social security case.  *See* Compl. ¶¶ 13-14.  The complainants "allege[d] that Judge Adams's issuance of the Show Cause Order, in combination with other ongoing disruptive behavior directed at the judges of the district, constituted 'conduct prejudicial to the effective and expeditious administration of the business of the courts.'"  JC Mem. 2-3 (quoting 28 U.S.C. § 351; JC&D Rule 3(h)).[2]

In response to the complaint, the acting Chief Judge of the Sixth Circuit appointed a Special Committee of three circuit judges and three district judges to investigate the complaint.  *See id.* at 3 & n.3.  During an initial evidence-gathering period, from May to August 2013, that Committee reviewed documents and interviewed fourteen witnesses. *Id.* at 4.

Based on information uncovered by the Special Committee, the acting Chief Judge, at the Special Committee's request, expanded the investigation to include whether Judge Adams suffers from a mental or emotional disability affecting his ability to discharge his judicial duties.  *Id.* at 1, 3.  After Judge Adams persisted in refusing to undergo a requested mental health evaluation, the acting Chief Judge again expanded the scope of the investigation, this time to include whether Judge Adams engaged in misconduct by refusing to cooperate with the investigation into his mental health. *Id.* at 1-2, 3.

---

[2] The Judicial Conference amended its Rules for Judicial-Conduct and Judicial-Disability Proceedings ("JC&D Rules") on September 17, 2015. Citations are to the pre-amendment Rules except where indicated.

After a three-day fact-finding hearing, the Special Committee issued a unanimous report to the Sixth Circuit Judicial Council on July 10, 2015.  *See id.* at 4-5.  The Special Committee's report included detailed findings of fact, upon which the Judicial Council later relied.  *See id.* at 6-22.  (These findings are summarized below.)  As relevant here, the Special Committee rejected Judge Adams's argument that the Fourth Amendment barred the Special Committee's request that he undergo a mental health evaluation.  *See id.* at 23-25.

### 1.      Misconduct Related To The Show Cause Order

According to the Special Committee, Judge Adams's "behavior changed sharply" in 2008, when his preferred candidate for a magistrate judge position was not selected.  "From then on, Judge Adams ceased interacting collegially with other members of the court and ceased virtually all involvement in court administrative matters."  *Id.* at 7.  In particular, after 2008, Judge Adams repeatedly expressed hostility and contempt for the court's magistrate judges, refusing to meet with some of them, and requiring all communications with them to go through his staff.  *See id.* at 8-9.   During the same period, Judge Adams withdrew more generally from collegial or collaborative relations with his colleagues.  *See id.* at 9-11.  He stopped attending court events, resigned from the three district court committees on which he previously served, and rebuffed colleagues' efforts to engage him, even refusing on one occasion to allow another district judge and his staff to enter Judge Adams's chambers to introduce themselves.  *See id.* at 7-11.  And Judge Adams has not been receptive to his colleagues' expressions of concern for him, instead suggesting they seek only to "impugn [his] character" as part of a "smear campaign" against him. JC&D Comm. Mem. 10.[3]

---

[3] The Special Committee also identified two "troubling" incidents that "deepened" its "concern about how Judge Adams's mental and emotional state might affect the administration of judicial business." JC Mem. 20. In one incident, the Special Committee was informed Judge Adams "'bumped' a magistrate judge hard on a running path near the Akron courthouse and then sprinted

Judge Adams issued the Show Cause Order that triggered his colleagues' misconduct complaint after a magistrate judge missed a deadline set by Judge Adams in a social security case. JC Mem. 16.  On Friday, February 1, 2013, Judge Adams learned that the magistrate judge had not filed a report and recommendation within 270 days of the complaint's filing, as required by Judge Adams's standard scheduling order for social security cases.  *Id.*  Judge Adams thereupon issued the Show Cause Order, requiring the magistrate judge to show cause by 4:00 p.m. on Monday, February 4, 2013, why the magistrate judge should not be held in contempt or otherwise sanctioned for failing to comply with the scheduling order.  *Id.*  Judge Adams did not notify the magistrate judge of the Show Cause Order or the imminent response deadline it imposed other than by filing the Order on the docket.  *Id.*

After learning of the Show Cause Order on Saturday, February 2, 2013, the magistrate judge e-mailed Judge Adams to explain that a clerical error had resulted in a miscalculation of the deadline and to take responsibility for the mistake.  *See id.*  The magistrate judge spent the weekend completing the report and recommendation and began arranging legal representation for a potential contempt hearing.  *Id.*  On Monday, February 4, 2013, Judge Adams's law clerk called the magistrate judge to say that Judge Adams accepted the magistrate judge's explanation, and Judge Adams issued another order deeming the Show Cause Order satisfied.  *Id.* at 17.

"The court's district judges expressed immediate concern with regard to the effects of the Show Cause Order on the magistrate judge and its impact on the administration of justice within the court."  JC&D Comm. Mem. 6.  "Following a unanimous vote, the Chief Judge of the Northern

---

away without apologizing or seeing if the judge needed assistance." *Id.* The Special Committee found Judge Adams's denial not credible. *Id.* In the other incident, Judge Adams reportedly blocked an intern's car with his own when the intern inadvertently parked in Judge Adams's space, then ordered court security personnel to ticket or tow the intern's car. *Id.*

District of Ohio sent a letter to Judge Adams stating that Judge Adams's issuance of the Show Cause Order was unwarranted and improper, and requesting that Judge Adams vacate the Show Cause Order and strike it from the docket." *Id.* at 6-7. Judge Adams refused, suggesting that his order delivered a "message that needed to be sent" in light of what Judge Adams perceived as the "history of defiance of the Magistrate Judges" and the failure of the Chief Judge to "discipline" magistrate judges who had been "disrespectful" and "defiant" towards Judge Adams. JC Mem. 9, 17.

Ultimately, in the course of the Special Committee investigation, "every witness—including Judge Adams—agreed that it was inappropriate for Judge Adams to have issued the Show Cause Order." JC&D Comm. Mem. 7. The record developed by the Special Committee reflects that the Court's magistrate judges "had to prioritize Judge Adams's Social Security cases above all other cases on their dockets for fear of provoking Judge Adams's ire," which "has harmed other district judges' ability to supervise and generally work with the magistrate judges" and "has hindered the overall administration of the court." JC Mem. 18; *see also* JC&D Comm. Mem. 6-7.

### 2. Misconduct And Potential Disability In Refusing To Cooperate With The Investigation

In the course of its investigation, the Special Committee encountered evidence that led its members to be concerned that "a reasonable person [would have] cause to question whether Judge Adams has a [mental or emotional] disability." JC Mem. 19. "Specifically, the evidence suggested that Judge Adams may have a disability that '(1) prevents him from maintaining a professional relationship with his colleagues, (2) prevents him from shouldering his responsibilities as a member of the District Court, and (3) causes him to make unfounded and destructive attacks against his colleagues.'" *Id.* at 19-20.

Based on this information, the Special Committee proposed in the Fall of 2013 that Judge Adams be evaluated by an independent mental health professional.  *See* Compl. ¶ 18.  After Judge Adams objected to undergoing such an evaluation, the Special Committee spent months attempting to secure a mental health evaluation of Judge Adams, while Judge Adams provided various reasons for persisting in his objection.  *See id.* ¶¶ 18-22.  In the midst of those discussions, in January 2014, Judge Adams revealed that he had in fact already undergone an evaluation by a psychiatrist of his own choosing months earlier and that this psychiatrist had opined that the Judge suffered from no "diagnosable mental disorder."  *Id.* ¶ 19.

Unsatisfied with the information offered by Judge Adams, the Special Committee advised Judge Adams that it might request that the investigation be expanded to include whether he suffers from a disability.  The Committee eventually made that request, which the acting Chief Judge granted on May 27, 2014.  *See id.* ¶¶ 21-23; JC Mem. 3, 20.

The Special Committee subsequently retained the services of a forensic psychiatrist to opine on whether Judge Adams might have an emotional or mental issue that amounts to a disability.  *See* JC Mem. 20.  The Committee requested that the forensic psychiatrist "perform the necessary evaluations of Judge Adams that would allow [him] to reach an opinion as to [Judge Adams's] emotional and mental state" and to "provide a report of [his] findings to the [Committee]."  *Id.*  To facilitate the forensic psychiatrist's efforts, the Committee asked Judge Adams in August 2014 to provide any records available to him pertaining to any mental or emotional health treatment or testing he had undergone.  *Id.*  The Committee also asked Judge Adams to submit to psychological testing by an expert in neuropsychology and neuroforensics, the results of which would be used by the forensic psychiatrist in Judge Adams's mental health evaluation.  *See id.* at 21; JC&D Comm. Mem. 11.

– 11 –

Judge Adams refused to undergo the requested independent psychological testing or to provide the requested documents, even after the Special Committee advised his counsel that a refusal to cooperate might constitute misconduct.  *See* JC Mem. 21.   Judge Adams's non-cooperation left the Committee's forensic psychiatrist unable to render an expert opinion or diagnosis regarding Judge Adams's mental or emotional state.  *Id.*  Based on materials provided to him by the Committee, however, the expert concluded that there is "a reasonable basis for concern as to Judge Adams'[s] mental or emotional state.  The data available so far do not suggest a mental state of psychotic proportions, but do suggest significant personality traits that may have contributed to the current concerns."  *Id.* (alteration in original).

On December 5, 2014, in light of Judge Adams's continued refusal to undergo the mental health evaluation and to produce records requested by the Special Committee, the Committee asked the acting Chief Judge to further expand the scope of the investigation to include whether Judge Adams had engaged in misconduct by refusing to cooperate.  *See* Compl. ¶ 26.   On December 9, 2014, the acting Chief Judge granted that request.  *See id.*; JC Mem. 21-22. Nonetheless, Judge Adams continued to refuse to undergo the testing or to produce the records requested by the Committee.  JC Mem. 21-22.

At the Special Committee's fact-finding hearing on April 20-22, 2015, Judge Adams sought to introduce the testimony of a second psychiatrist who apparently had recently evaluated Judge Adams's mental health at his request.  *Id.* at 5; *see* Compl. ¶¶ 30, 35.  The Committee excluded the proposed testimony after Judge Adams failed to produce the records underlying the psychiatrist's evaluation.  *See* JC Mem. 5, 22; Compl. ¶¶ 35-37.

**B.**     **The Sixth Circuit Judicial Council's February 22, 2016 Order and Memorandum**

On September 10, 2015, the Sixth Circuit Judicial Council conducted a meeting to consider the complaint against Judge Adams.  JC Mem. 6.  Before the meeting, Judge Adams submitted a written response to the Special Committee's report.  *Id.*  At the meeting, Judge Adams's counsel presented oral argument contesting the Committee's findings and recommendations.  *Id.*

On February 22, 2016, the Judicial Council issued an Order and Memorandum containing its findings and remedial actions.  The seventeen circuit and district judges voting in the matter were unanimous in their decision.  *See id.* at 1 & n.1.

With respect to the initial misconduct complaint against Judge Adams, the Judicial Council found that Judge Adams's issuance of the Show Cause Order constituted "conduct prejudicial to the effective and expeditious administration of the business of the courts," JC&D Rule 3(h)(1), "because it had prejudicial effects on the District Court as a whole; had prejudicial effects on the ways in which the magistrate judges of the Northern District of Ohio performed their work generally; and had prejudicial effects on the magistrate judge it targeted."  JC Mem. 27.  The Judicial Council also held that Judge Adams engaged in misconduct by refusing to cooperate with the Committee's request that he undergo a mental health evaluation by an independent psychiatrist, "as it prejudiced the effective and expeditious investigation of this matter, which is an integral part of the business of the courts."  *Id.* (citing JC&D Rule 3(h)(1)).  With respect to Judge Adams's potential disability, the Judicial Council found itself unable to "determine whether Judge Adams has a 'temporary or permanent condition' that renders him 'unable to discharge the duties' of his office, because Judge Adams refused to undergo an evaluation by the forensic psychiatrist the [Committee] retained."  *Id.* (citing JC&D Rule 3(e)).

– 13 –

In light of its findings, the Judicial Council issued a public reprimand of Judge Adams for his issuance of the Show Cause Order and its prejudicial effects on the administration of the business of the District Court. *See id.* at 28-29 (¶ 1). The Judicial Council further directed that Judge Adams issue no such order with respect to the work of any of the court's judges in the future, *id.* at 29 (¶ 1.d), and specified that the Special Committee "shall maintain jurisdiction for two years to ensure that Judge Adams does not engage in additional inappropriate behavior involving magistrate judges, whether in his official functions or otherwise." *Id.* (¶ 3).

Although the Judicial Council was unable to determine on the existing record whether Judge Adams suffers from a mental disability that renders him unable to discharge the duties of his office, the Judicial Council determined that "[s]ufficient evidence exists to merit further investigation." *Id.* (¶ 2). The Judicial Council ordered that Judge Adams "shall undergo a mental-health evaluation by a psychiatrist selected by the Special Investigating Committee"; that the psychiatrist "shall be provided with any material from the Special Investigating Committee and Judge Adams that the psychiatrist deems appropriate"; and that "[a]ny report(s) prepared by the psychiatrist shall be made available for the Judicial Council's confidential review." *Id.* at 29-30 (¶ 4) (citing 28 U.S.C. § 353(c); JC&D Rules 1, 13(a), 20(c); 6th Cir. JC&D Rule 14(b)).

The Judicial Council stated that it would "retain jurisdiction to order further remedies depending on the results of the evaluation." *Id.* at 30 (¶ 6). And "to protect the public and the judiciary from the possibility of Judge Adams engaging in inappropriate or embarrassing behavior while the investigation continues," the Judicial Council ordered that Judge Adams's "present docket shall be transferred to other judges" and that "no new cases shall be assigned to Judge Adams for a period of two years." *Id.* at 29 (¶ 2) (citing 28 U.S.C. § 354(a)(2)(A)(i); JC&D Rule 20(b)(1)(D)(ii)). It also ordered that "Judge Adams shall submit to any treatment or counseling

– 14 –

deemed necessary by the psychiatrist."   *Id.* at 30 (¶ 5).   If the mental health evaluation "demonstrates that [Judge Adams] does not suffer from a disability that renders him unable to discharge the duties of his office, or if he receives treatment after the evaluation that remedies any disability," the Judicial Council explained, it "may suspend the Order that no new cases be assigned to him for two years," but "Judge Adams would nevertheless remain subject to the Special Investigating Committee's continued jurisdiction" for up to two years.   *Id.* (¶ 6).

Finally, the Judicial Council indicated its intent to "request that Judge Adams voluntarily retire, waiving the ordinary length-of-service requirements," should he continue to "refuse to undergo a mental-health evaluation by a psychiatrist chosen by the Special Investigating Committee."   *Id.* (¶ 7) (citing 28 U.S.C. § 354(a)(2)(B)(ii); JC&D Rule 20(b)(1)(D)(v)).

### C.   The Judicial Conference Committee On Judicial Conduct And Disability

Judge Adams petitioned the JC&D Committee for review of the Judicial Council's order. *See* JC&D Comm. Mem. 1. In his petition, Judge Adams challenged the Judicial Council's determinations that he had engaged in misconduct in his issuance of the Show Cause Order and related actions and in his refusal to submit to a mental health evaluation.   Judge Adams also challenged the Judicial Council's choice of sanctions.

On August 14, 2017, the seven-member JC&D Committee issued an order denying in part and granting in part Judge Adams's petition for review.   *See id.* at 2.   The Committee affirmed the Judicial Council's determination that Judge Adams had engaged in misconduct when he issued the Show Cause Order, rejecting Judge Adams's arguments that the Judicial Council had clearly erred in its factual findings and had impermissibly sanctioned him based on the merits of the Order.   *See id.* at 17-23.   The Committee likewise sustained the Judicial Council's determination that Judge Adams had engaged in misconduct by refusing to undergo the mental health evaluation requested

by the Special Committee, concluding that "Judge Adams's objections to the evaluation do not justify his failure to cooperate in the investigation." *Id.* at 39; *see also id.* at 23-34. The JC&D Committee upheld the Judicial Council's decision to issue a public reprimand, *id.* at 34-35; its directive that Judge Adams undergo the requested mental health evaluation, *id.* at 35-36; and its order that the Special Committee retain jurisdiction "for a reasonable period of time, not to exceed two years, to ensure Judge Adams's ability to discharge the duties of office as a federal district court judge," *id.* at 38.

Concerning the mental health evaluation, the JC&D Committee held that the Act clearly authorizes a judicial council or special committee to seek a mental health evaluation where the "judicial council or its special committee has a reasonable basis for concluding that a judicial colleague might suffer from a disability rendering him or her unable to perform the duties and responsibilities of the judicial office." *Id.* at 29; *see also id.* at 24-30. Applying that standard to the record before it, the Committee ruled that "[t]he Judicial Council and the Special Committee had a reasonable basis to believe that such evaluation was warranted based on their factual findings" in Judge Adams's case. *Id.* at 17; *see also id.* at 32-34.

Noting the lack of "evidence in the record" and "specific findings" concerning Judge Adams's ability to perform his adjudicative duties, however, the JC&D Committee vacated the Judicial Council's order temporarily reassigning Judge Adams's cases and suspending the assignment of new cases to him. *Id.* at 36-37. The Committee acknowledged that the Judicial Council's "ability to make such a determination was impeded by Judge Adams's refusal to submit to a mental health examination" and that the appropriateness of such a sanction cannot be "rule[d] out." *Id.* at 37.

"Having rejected Judge Adams's objections," the JC&D Committee indicated that it "anticipate[s] that Judge Adams will expeditiously comply with the Judicial Council's Order, as affirmed by this Committee, that he submit to a mental health examination by a psychiatrist selected by the Special Committee." *Id.* at 39. "[S]hould Judge Adams refuse to submit to the mental health examination ordered by the Judicial Council and affirmed by this Committee, sanctions for Judge Adams's continued failure to cooperate—including the prohibition of the assignment of new cases on a temporary basis for a time certain—may be warranted subject to the Judicial Council's sound discretion." *Id.* (citing 28 U.S.C. § 354(a)(2) and JC&D Rule 20(b)(1)(D)).

### D.    This Lawsuit

Rather than "expeditiously comply with the Judicial Council's Order, as affirmed by [the JC&D Committee]," *id.*, Judge Adams filed this Complaint for Declaratory and Injunctive Relief on September 14, 2017. The Complaint named as defendants the Judicial Council, the JC&D Committee, and the chair of each in his official capacity. *See* Compl. ¶¶ 4-7. (On November 17, 2017, the parties stipulated to dismissal of the official-capacity defendants. *See* ECF No. 9.)

The Complaint seeks, among other relief, (1) a declaration that the Act is unconstitutional in whole or in part; (2) a declaration that "any provisions in the Judicial Council's Order and Memorandum, or in the Review Committee's Memorandum of Decision, requiring [Judge Adams] to undergo a compelled psychiatric examination, to be disciplined for objecting in good faith to undergoing a compelled examination, or to accept any compelled medical treatment, to be unconstitutional"; (3) a declaration that "any provisions in the Judicial Council's Order and Memorandum, or in the [JC&D Committee's] Memorandum of Decision, authorizing a limitation of [Judge Adams's] docket, a further investigation into [Judge Adams's] conduct on the bench,

– 17 –

monitoring of [Judge Adams's] conduct for two years, or other special restrictions on his actions as a federal judge, to be unconstitutional"; and (4) an injunction prohibiting "enforcement of the foregoing unconstitutional provisions" and "any further investigation" of Judge Adams.  Compl. at 23.  The Complaint does not challenge the Judicial Council's determination, affirmed by the JC&D Committee, that Judge Adams engaged in misconduct in his issuance of the Show Cause Order.

As the bases for the requested relief, Judge Adams alleges that the Act is unconstitutionally vague in violation of the Due Process Clause (Counts I and III); that the Judicial Council exceeded its statutory and constitutional authority in directing him to undergo a mental health evaluation (Count II); that the mental health evaluation would violate the Fourth Amendment (Counts IV and V); that the Judicial Council violated his due process rights in determining that he engaged in misconduct by objecting to the mental health evaluation requested by the Special Committee (Count VI); and that Defendants have issued "orders and threats" that "constitute an attempt to remove Plaintiff from office, without impeachment and in violation of the Constitution, in substance if not form" (Count VII).

### E.    The Sixth Circuit Judicial Council's June 27, 2018 Order and Memorandum

On June 27, 2018, the Judicial Council issued an Order and Memorandum describing the actions it had taken following the Order and Memorandum of the JC&D Committee.  *See* June Order at 3-4.  After the JC&D Committee issued its Order, the Judicial Council returned the matter to the Special Committee and requested a status report and recommendations consistent with the JC&D Committee's Order.  *Id.* at 3.  Consistent with the Judicial Council's Order, as affirmed by the JC&D Committee, the Special Committee sought to arrange for the mental health evaluation of Judge Adams.  *Id.*  On September 14, 2017 Judge Adams's counsel indicated to the Special

Committee that Judge Adams did not intend to undergo the examination.  *Id.* at 4.  "In light of the Judge Adams's renewed refusal to comply with the Judicial Council's Order after the exhaustion of his review rights," *id.*, the Special Committee recommended that the Judicial Council "prohibit the assignment of new cases to Judge Adams for six months as a sanction for his failure to comply," *id.* at 3.

On March 20, 2018, the Judicial Council held a meeting to consider a proposal to resolve the matter based on the then-current circumstances.  *Id.* at 4.  In addition to the Special Committee's recommendation, the Judicial Council further considered the views of the judges of the Northern District Ohio that "Judge Adams's behavior had improved and stabilized" and those judges' report that "there had been no recurrence of the sort of behavior that occasioned the misconduct finding."  *Id.*

Following its "reassessment" of the matter, the Judicial Council "declined to halt assignment of cases to Judge Adams," as the Special Committee had recommended.  *Id.*  Instead, the Judicial Council imposed no further sanction, and stated that "if no further misconduct has occurred" within one year of its Order, it would dismiss the complaint.  *Id.*  Pursuant to the Judicial Council's June Order, Judge Adams is no longer required to undergo a mental health evaluation. Further, there is no longer any actively pending investigation into Judge Adams's conduct, nor is there any limitation on Judge Adams's docket or other restrictions on him as a federal district judge.

### F.    Defendants' Motions to Dismiss

On December 21, 2017, Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 10.  Defendants argued that jurisdiction over Judge Adams's claims was expressly precluded by statute and that Judge Adams had failed

to state a claim on which relief can be granted.  On July 10, 2018, Judge Adams filed his opposition

to that motion.  ECF No. 17.  On September 5, 2018, the Court agreed to withhold consideration

of Defendants' initial motion to dismiss pending disposition of this motion to dismiss on mootness

grounds.   Minute Order Granting Consent Motion for Briefing Schedule (Sep. 5, 2018).

Defendants now move to dismiss the Complaint as moot, expressly reserving all arguments

presented in their original Motion should this case not be dismissed as moot.

## LEGAL STANDARD

"When considering a motion to dismiss for lack of jurisdiction, . . .  the court 'is not

limited to the allegations of the complaint.'"  *Judicial Watch, Inc. v. Nat'l Archives & Records

Admin.*, 845 F. Supp. 2d 288, 294 (D.D.C. 2012) (quoting *Hohri v. United States,* 782 F.2d 227,

241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987)).  "Rather, [the] court may

consider such materials outside the pleadings as it deems appropriate to resolve the question of

whether it has jurisdiction in the case." *Id.* (internal citation omitted). The plaintiff bears the burden

of establishing jurisdiction by a preponderance of the evidence. *Id.* (citing *Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 561 (1992)).

## ARGUMENT

In his Complaint, Judge Adams asserts seven separate Counts under a variety of different

legal theories.  Each claim, however, is fundamentally a challenge to the same thing—the Judicial

Council's initial directive that Judge Adams undergo a mental health evaluation as part of the

Special Committee's misconduct investigation.  But following its June Order, the Judicial Council,

citing a lack of subsequent misconduct by Judge Adams, has removed the evaluation requirement

and discontinued any further investigation of Judge Adams.  In parallel circumstances, the D.C.

Circuit has held that when a requirement imposed in judicial misconduct proceedings no longer

has effect at the time of judicial review, any challenge to that requirement is moot.  *See McBryde*, 264 F.3d at 56-57.

 "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that [a judicial] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'"  *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir.1990)).  When the defendant has voluntarily withdrawn the alleged legal violation, the case should be dismissed as moot so long as "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Coal. of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1189 (D.C. Cir. 2004) (quoting *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Those two conditions are readily satisfied in this case.  First, there is no reasonable basis to conclude that the Judicial Council will again require Judge Adams to undergo a mental health evaluation; in fact, in light of the Judicial Council's recent reassessment of the matter and the lack of additional misconduct by Judge Adams, there is no reasonable basis to conclude that the Judicial Council will take *any* additional action.  Second, by withdrawing the requirement that Judge Adams undergo an evaluation, the Judicial Council's June Order completely and irrevocably eliminates the effects of the complained-of action.  Judge Adams is no longer required to submit to an evaluation, and he thus does not stand to suffer the alleged constitutional and other injuries he complains of in this action.  The mootness doctrine compels dismissal.

A.    There is no "reasonable expectation" that Defendants will require Judge Adams to undergo a mental health evaluation.

The first applicable condition is met because, in light of the Judicial Council's June Order, there is "sufficient assurance" that Defendants will not direct Judge Adams to undergo a mental health evaluation.  *Coal. of Airline Pilots*, 370 F.3d at 1190.  On its face, the Order states that the Judicial Council "imposes no further sanction at this time" and that the Judicial Council intends to dismiss the complaint "if no further misconduct has occurred" within a one-year period—*i.e.*, by June 27, 2019.  June Order at 4.  The Judicial Council reached this decision following its thorough consideration of the Special Committee's recommendation, a proposal for resolution of the matter based on the current circumstances, and a report on recent developments from the judges of the Northern District of Ohio.  *Id.* at 3-4.  In short, there is nothing in the June Order to indicate any reasonable expectation that the Judicial Council will again require Judge Adams to undergo a mental health evaluation, or take any other investigative or disciplinary action.

Moreover, the Judicial Council's decision to withdraw the measures it had previously imposed was predicated on a report from Judge Adams's judicial colleagues that his conduct had "improved and stabilized" and that "there had been no recurrence of the sort of behavior that occasioned the misconduct finding."  *Id.* at 4.  The Judicial Council's conclusion was buttressed by its hope that Judge Adams "can serve without any further misconduct."  *Id.*  The Judicial Council accordingly made clear that it had no intention to impose *any* sanction, let alone to require a mental health evaluation of the type Plaintiff challenges in this litigation.  Judge Adams, meanwhile, has not professed an intent to reengage in the behavior underlying the judicial misconduct complaint.  In these circumstances, there can be no "'reasonable expectation that [Judge Adams] would be subjected to the same action again.'"  *McBryde*, 264 F.3d at 56 (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)); *see Cierco v. Lew*, 190 F. Supp. 3d 16, 24

(D.D.C. 2016) (case dismissed as moot after Treasury Department withdrew challenged action upon finding that the plaintiff "no longer operates in a manner that poses a money laundering threat to the U.S. financial system"), *aff'd on other grounds sub nom. Cierco v. Mnuchin*, 857 F.3d 407 (D.C. Cir. 2017).

Even if the record before the Judicial Council did not contain those specific findings, the mootness analysis does not presume that the plaintiff will reengage in the underlying conduct.  In fact, the opposite presumption holds.  "When considering the likelihood that an injury will be repeated, the Supreme Court has in general 'been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury.'" *McBryde*, 264 F.3d at 56 (quoting *Honig v. Doe*, 484 U.S. 305, 320 (1988)).  That presumption has full force here, and Judge Adams cannot plausibly contend that he intends to engage in conduct that would lead to the re-imposition of the requirement that he undergo a mental health evaluation.  In fact, he has strenuously argued to the contrary throughout both the administrative proceeding and this litigation.  *See* Compl. ¶¶ 9, 19, 30, 38-41.

Finally, Judge Adams may seek to argue that the Judicial Council's retention of jurisdiction for a one-year period does not foreclose the possibility of a renewed requirement that he undergo an evaluation.  But such an argument would rely on the bare *possibility* of such action, which the Judicial Council reserved only in the event that Judge Adams commits misconduct within the specified period (of which nine months now remain).  It is undisputed that Judge Adams has committed no such misconduct since the June Order was issued and, as noted above, he has indicated no intention to do so in the future.  That the Judicial Council possesses the power to reinstate the requirement "is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists."  *Nat'l Black Police Ass'n v. D.C.*, 108 F.3d 346, 349 (D.C. Cir.

1997).  "Rather, there must be evidence indicating that the challenged" action by the defendant is *likely* to recur.  *Id.*; *see Nat'l Ass'n of Home Builders v. Salazar*, 827 F. Supp. 2d 1, 6 (D.D.C. 2011) (rejecting argument that the defendants must "unequivocally foreclose[] developing a similar policy in the future, and . . . admit[] culpability in this proceeding").

In any event, even if the Judicial Council were to again impose a mental health evaluation requirement—or take some other investigative or disciplinary action potentially giving rise to a live Article III controversy—Judge Adams could seek review from the JC&D Committee or try to challenge that step by filing a new Complaint in this Court, as he has sought to do in this case. The mere possibility of some future action by the Judicial Council does not, however, give the Court license to retain jurisdiction over a dispute that is no longer live.

> **B.**     **The Judicial Council's withdrawal of the mandatory mental health evaluation has eradicated the effects of the alleged violation.**

The second condition of the mootness analysis—whether intervening events have "completely and irrevocably eradicated the effects of the alleged violation," *Coal. of Airline Pilots*, 370 F.3d at 1189—is also satisfied.  The Judicial Council's decision to remove the requirement that Judge Adams undergo a mental health evaluation undoes the alleged effects of the prior Judicial Council Order that is the basis of Judge Adams's claims.  Because Plaintiff is no longer required to undergo an evaluation, he can no longer allege any harm from being required to do so. The claims for relief that Plaintiff would have this Court adjudicate thus amount to no more than a request for an advisory opinion on the propriety of investigative measures that are no longer in effect.  *See Coal. of Airline Pilots*, 370 F.3d at 1190; *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d

387, 396 (D.C. Cir. 2013) ("The Article III case or controversy requirement prohibits courts from issuing advisory opinions on speculative claims.").[4]

Plaintiff cannot maintain this lawsuit premised on the mere *possibility* that the Judicial Council *might* impose this requirement (or some other requirement) on him again in the future. Even if, hypothetically, there were a final decision to impose such a requirement, not subject to further administrative appeal, Plaintiff could attempt to challenge it in this Court; but he cannot invoke Article III jurisdiction based on that mere future possibility. *See Coal. of Airline Pilots*, 370 F.3d at 1189 (explaining that courts "refrain from deciding" a case if the decision will not "have a more-than-speculative chance of affecting [the plaintiff's rights] in the future"). And, again by the plain terms of the June Order, the Judicial Council made clear that any such future action would necessarily be premised on Judge Adams himself committing further misconduct. Order at 4. As noted above, Plaintiff has disavowed any basis for such a measure. *See* Compl. ¶¶ 9, 19, 30, 38-41.

The D.C. Circuit's decision in *McBryde*, a case that also involved a challenge to a disciplinary order under the Judicial Misconduct & Disability Act, is instructive. In that case, the Judicial Council had suspended assignment of cases to the plaintiff judge for a one-year period and disqualified the plaintiff for a three-year period from presiding over cases involving attorneys who participated in the misconduct investigation. 264 F.3d at 54. When the case reached the court of appeals, both "[t]he one-year and three-year bans ha[d] expired." *Id.* at 55. The D.C. Circuit

---

[4] The problematic nature of Plaintiff's request for an advisory opinion is compounded by the fact that he seeks a ruling on the constitutionality of provisions of a federal statute. In such circumstances, maintaining jurisdiction over this action would run afoul not only of Article III mootness concerns, but also of the principle of constitutional avoidance. *See Ass'n of Am. Railroads v. U.S. Dep't of Transp.*, 896 F.3d 539, 544 (D.C. Cir. 2018) ("Longstanding principles of constitutional avoidance caution courts against exercising that power [to declare an Act of Congress unconstitutional] unless it is strictly necessary to resolve a case.").

concluded that it could provide no meaningful relief to the plaintiff, reasoning that "[n]o relief sought in this case would return to Judge McBryde the cases he was not assigned or otherwise improve his current situation."  *Id.*  The Judicial Council's removal of the evaluation requirement presents an even stronger case for mootness than was present in *McBryde*, where the sanctions had expired of their own accord.  Here, by contrast, the Judicial Council has reached a considered decision not to move forward with the investigative measure it had previously required.

Because Judge Adams no longer faces that requirement, the various allegations of harm he raises in this lawsuit no longer hold.  Plainly, this Court cannot enjoin Defendants from imposing a requirement that Defendants, of their own accord, have already withdrawn.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted and Plaintiff's Complaint dismissed as moot.


Dated:  September 19, 2018                          Respectfully submitted,

                                                     JOSEPH H. HUNT
                                                     Assistant Attorney General

                                                     JENNIFER D. RICKETTS
                                                     Director
                                                     Federal Programs Branch

                                                     CHRISTOPHER R. HALL
                                                     Assistant Director
                                                     Federal Programs Branch

                                                      */s/ M. Andrew Zee*
                                                     M. ANDREW ZEE
                                                     Trial Attorney (California Bar No. 272510)
                                                     United States Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     450 Golden Gate Avenue

– 26 –

San Francisco, CA 94102
Telephone: (415) 436-6646
m.andrew.zee@usdoj.gov

*Counsel for Defendants*