IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE HON. JOHN R. ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-1894 (ABJ) |
| | ) | |
| THE JUDICIAL COUNCIL OF THE | ) | |
| SIXTH CIRCUIT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
ON MOOTNESS GROUNDS; REQUEST
FOR ORAL HEARING**

Paul J. Orfanedes
D.C. Bar No. 429716
Robert D. Popper
D.C. Bar No. 1023592
JUDICIAL WATCH, INC.
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172
porfanedes@judicialwatch.org
rpopper@judicialwach.org

October 24, 2018                    *Counsel for Plaintiff*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.    FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

    A.    Special Committee ........................................................................................4

    B.    Judicial Council ...........................................................................................10

    C.    Judicial Conference Committee on Judicial Conduct and Disability...........................................................................................................11

    D.    Litigation......................................................................................................12

    E.    June 27, 2018 Order of the Judicial Council...............................................12

III.    ARGUMENT.................................................................................................................15

    A.    The Express Language of the June 27, 2018 Order Contradicts Defendants' Mootness Argument Regarding the Compelled Examination Order...............................................................................................15

    B.    Defendants Ignore Key Components of Judge Adams' Other Claims ..........................................................................................................16

    C.    Defendants Have Not Met Their Heavy Burden Under the Voluntary Cessation Doctrine.................................................................18

IV.    CONCLUSION..............................................................................................................21

REQUEST FOR ORAL HEARING..........................................................................................22

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page**

*City of Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982) ............................................................................................18

*Firefighters Local Union No. 1784 v. Stotts*,
    467 U.S. 561 (1984) ............................................................................................17

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
    528 U.S. 167 (2000) ...............................................................................18, 19, 20

*Global Tel*Link v. FCC*,
    866 F.3d 397 (D.C. Cir. 2017) ...........................................................................20

*McBryde v. Comm. to Review Circuit Council Conduct & Disability*
    *Orders of the Judicial Conf. of the U.S.*,
    264 F.3d 52 (D.C. Cir. 2001) .................................................................. 16-17, 18

*McBryde v. Comm. to Review Circuit Council Conduct & Disability*
    *Orders of the Judicial Conf. of the U.S.*,
    83 f. Supp.2d 135 (D.D.C. 1999) .......................................................................17

*Penthouse Int'l Ltd. v. Meese*,
    939 F.2d 1011 (D.C. Cir. 1991) .........................................................................18

*Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*,
    581 F.3d 1169 (9th Cir. 2009) .....................................................................20, 21

*True the Vote, Inc. v. IRS*,
    831 F.3d 551 (D.C. Cir. 2016) ........................................................... 18, 19-20

*United States v. Concentrated Phosphate Export Ass'n., Inc.*,
    393 U.S. 199 (1968) ............................................................................................19

*United States v. W. T. Grant Co.*,
    345 U.S. 629 (1953) ............................................................................................18

**Statues, Rules, and Regulations**

LCvR 7(f)................................................................................................................22

N.D. Ohio Local Rule 16.2(a)(2)(D) ..........................................................................3

N.D. Ohio Local Rule 16.3.1 ......................................................................................3

**Miscellaneous**

Jonah Gelbach and David Marcus, *Crushed*,
    Judicature (Autumn 2017) .....................................................................................3

Brie Zeltner, *Wait for a Social Security disability decision drags on months - and years*
    *- for many Ohioans* (Dec. 17, 2017), https://www.cleveland.com/healthfit/index.
    ssf/2017/12/wait_for_a_social_security_dis.html ...........................................3

*Disability backlog tops 1M; thousands die on waitlist* (Sept. 17, 2017),
    https://www.cbsnews. com/news/social-security-disability-
    backlog-tops-1-million-thousands-die-on-waitlist............................................3

https://en.wikipedia.org/wiki/John_R._Adams............................................................17

Plaintiff, United States District Judge Hon. John R. Adams, by counsel, respectfully submits this memorandum of points and authorities in opposition to Defendants' motion to dismiss on mootness grounds.

## I.    INTRODUCTION.

For 2077 days – or stated differently, for 5 years, 8 months, and 9 days – Judge Adams has lived under the shadow of a judicial misconduct and disability proceeding initiated by four senior judges in the Northern District of Ohio.[1]  The proceeding resulted in a February 22, 2016 Order and Memorandum by the Judicial Council of the Sixth Circuit finding that Judge Adams committed misconduct by failing to undergo a psychiatric examination demanded by the Special Committee investigating the matter.  The order also directed Judge Adams to undergo the examination and further ordered that it retain jurisdiction over Judge Adams for two years, among other findings and conclusions.  On June 27, 2018, the Judicial Council issued another order and memorandum that extended jurisdiction over Judge Adams for an additional year.  Defendants claim that the Judicial Council's recent order renders Judge Adams' lawsuit moot.  It plainly does not.

Defendants' reliance on the June 27, 2018 order can be narrowed to a single paragraph from the order, which reads, in pertinent part:

> [T]he Judicial Council, hopeful that Judge Adams can serve without any further misconduct, imposes no further sanction at this time.  The Judicial Council will review the matter in one year and will, if no further misconduct has occurred, dismiss the complaint.  The Judicial Council notes that the judges of the Northern District of Ohio unanimously favor this result.  The Judicial Council retains jurisdiction over this matter.

---

[1]    Two of these senior judges have passed away during the lengthy duration of this process, and a third has retired.

June 27, 2018 Order at 4.  The order does not withdraw, vacate, or otherwise reconsider or rescind the earlier misconduct finding or the order that Judge Adams undergo an involuntary psychiatric examination.   It contains no mention of any variant of the words "withdraw," "vacate," "reconsider," or "rescind."   It simply says "no *further* sanction" will be imposed on Judge Adams "*at this time*."  *Id.* (emphasis added).

Unsurprisingly, Defendants construct a narrative that wholly ignores the factual allegations in Judge Adams' complaint and the remedies he seeks.  Much like the process Judge Adams has endured to date, Defendants seek to have this Court rely exclusively upon their version of the facts. They seek dismissal before this Court has had an opportunity to review the underlying record and adjudicate whether Defendants had the constitutional or statutory authority to do what they have done to Judge Adams or whether he was afforded proper due process.  Unquestionably, a full review of the record will contradict the vast majority of the assertions made in Defendants' motion. It will allow the Court to see the 32 statements and sworn declarations from court personnel,[2] practicing attorneys, and personal acquaintances that the Special Committee was not interested in reviewing.  It will demonstrate that *every* subpoena proposed by Judge Adams to assist in his defense was rejected.  It will reveal that two separate, highly qualified mental health professionals opined that Judge Adams had no form of mental disability, but that their opinions were ignored. The record also will highlight the adversarial nature of the proceedings against Judge Adams despite the clear requirement that such proceedings be investigative.

Because the June 27, 2018 order merely states no further sanctions will be imposed on Judge Adams at this time and does not vacate or rescind the earlier order, a live controversy

---

[2]     These included affidavits from court security officers, law clerks, a courtroom deputy, and court reporters – all personnel that interacted with Judge Adams on an almost daily basis.

remains for this Court to adjudicate.  A live controversy also remains because the order has no effect on Judge Adams' various legal claims, including his due process claims.  Nor have Defendants satisfied the "heavy burden" of demonstrating that the voluntary cessation doctrine applies.  Judge Adams' lawsuit plainly is not moot.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

Defendants' second motion to dismiss begins by asserting that the "facts and procedural history of this case" are described in the orders of the Judicial Council and Judicial Conference. As detailed above, however, it is the facts and procedural history that were deliberately *excluded* from those orders that are at the heart of this litigation.  The facts are clear.

On February 1, 2013, Judge Adams issued a show cause order asking a magistrate judge to explain his failure to issue a timely decision in a Social Security appeal assigned to Judge Adams. Compl., ¶ 13.  The timeliness of decisions in Social Security cases had been a recurrent problem, and, as a result, it was Judge Adams' practice to issue scheduling orders[3] for Social Security appeals.[4]  *Id.*  In the particular case at hand, the claimant had waited nearly 5.5 years from the date of her administrative claim for a final decision.  When the magistrate judge indicated that human error caused a miscalculation of the deadline, Judge Adams sealed his order and deemed it satisfied, all within a span of 48 hours.  *Id.*  Because the case was a Social Security appeal, the

---

[3]    Such scheduling orders were expressly permitted by then-N.D. Ohio Local Rule 16.2(a)(2)(D), and the need for deadlines in Social Security matters similar to those in Judge Adams' scheduling order was later recognized by N.D. Ohio Local Rule 16.3.1.

[4]    Judge Adams' concerns continue to date to be recognized by publications across the country.  *See*, *e.g.*, Jonah Gelbach and David Marcus, *Crushed*, Judicature (Autumn 2017) at 65; *Disability backlog tops 1M; thousands die on waitlist* (Sept. 17, 2017), https://www.cbsnews. com/news/social-security-disability-backlog-tops-1-million-thousands-die-on-waitlist;    Brie Zeltner, *Wait for a Social Security disability decision drags on months - and years - for many Ohioans* (Dec. 17, 2017),   https://www.cleveland.com/healthfit/index.ssf/2017/12/wait_for_a_ social_security_dis.html.

show cause order and other filings were not publicly available, but were only available to the parties. *Id.*

Despite those remedial actions by Judge Adams, on or about February 15, 2013, four senior judges of the District Court filed a judicial complaint against Judge Adams. Compl., ¶ 14. The complaint alleged that Judge Adams lacked authority to issue the order and further alleged that the order constituted "an extreme, unwarranted, and unjustified abuse of judicial discretion." *Id.* The complaint also alleged that Judge Adams had a "strained relationship with the other judges of the court" and had "withdrawn from participation in the governance and social life of the Court." *Id.* The complaint did not attribute the show cause order or alleged strained relationship and withdrawal to any alleged disability or other condition. *Id.*

Judge Adams filed a timely response to the complaint in March 2013. Compl., ¶ 16. He did not deny issuing the show cause order, but explained why he had done so and how he discharged the order and placed both the order and response under seal within 48 hours of its issuance. *Id.* He also addressed the complainant's concerns about his allegedly strained relationship with other judges and withdrawal from court governance. *Id.*

A.    **Special Committee.**

When requested by the Special Committee to appear for an interview[5] in August 2013, Judge Adams appeared and answered the Special Committee's questions. Compl., ¶ 17. He also attempted to resolve the complaint informally by offering to withdraw the then-sealed order and related filings and by agreeing to attend judges' meetings and any court committee meetings to which the District Court's chief judge might appoint him, among other measures. *Id.*

---

[5]    A review of the transcript will reveal that, rather than an open-ended interview, the Special Committee treated this as an opportunity to cross-examine Judge Adams in an adversarial, if not belligerent, fashion.

In the Fall of 2013, the Special Committee demanded that Judge Adams undergo a psychiatric evaluation as part of its investigation. Compl., ¶18. In what would become a consistent theme in relation to the evaluation, the Special Committee identified no specific reason for the request. *Id.* Judge Adams objected in good faith to the Special Committee's demand, but nonetheless voluntarily underwent an examination by a local, board certified psychiatrist, and in January 2014, he submitted a report of the examination to the Special Committee. *Id.*, ¶ 19. The report concluded that Judge Adams did not suffer from any diagnosable mental disorder. *Id.*

Despite the receipt of this report, the Special Committee persisted in its demand. Compl., ¶ 20. Thereafter, Judge Adams agreed to undergo a further examination provided certain reasonable conditions were met. *Id.* These included being provided specific information about the reasons for the examination, having input into the selection of the mental health professional chosen to perform the examination and the parameters of the examination, and agreed-upon limitations on any materials provided to the mental health professional selected to perform the examination. *Id.* The Special Committee rejected every one of Judge Adams' proposals. *Id.*

In January and again in February 2014, the Special Committee advised Judge Adams that, if he continued to object to undergoing an examination, it would seek to expand the scope of its investigation to include whether he suffered from a disability and would order him to submit to a compelled examination. Compl., ¶ 21. Judge Adams continued to object to undergoing a compelled examination because, not only did the Special Committee refuse to identify any specific reason for demanding a compelled examination, it also refused to allow Judge Adams any input into the scope of the examination or the materials provided to the mental health professional selected to perform the examination. *Id.*, ¶ 22. The Special Committee also rejected the report of the examination Judge Adams underwent voluntarily. *Id.*

Thereafter, the Special Committee made good on its threat and asked Judge Boggs to expand the scope of the Special Committee's investigation to include whether Judge Adams suffers from a mental disability.  Compl., ¶ 23.  On May 27, 2014, Judge Boggs granted the Special Committee's request.  *Id.*  The Special Committee then demanded the production of all of Judge Adams' mental health records.  *Id.*, ¶ 24.  Judge Adams objected to the demand, but also informed the Special Committee that he had no such records to produce.  *Id.*  The Special Committee continued on its quest to compel an examination in September 2014, ordering Judge Adams to undergo three hours of psychological testing.  *Id.*, ¶ 25.  Judge Adams again refused, and the Special Committee again sought to expand the scope of its investigation.  *Id.*, ¶¶ 25-26.  On December 9, 2014, Judge Boggs granted a request to expand the investigation to include whether Judge Adams' failure to submit unconditionally to psychological testing on terms mandated by the Special Committee was itself misconduct.  *Id.*, ¶ 26.

The Special Committee held a three-day evidentiary hearing on April 20-22, 2015.  Compl., ¶ 29.  Prior to the start of the hearing, Judge Adams voluntarily underwent a second psychiatric examination, performed by a nationally-renowned psychiatrist and leading expert on legal and ethical issues in medicine and psychiatry.  *Id.*, ¶ 30.  As part of this second examination, Judge Adams also underwent extensive psychological testing performed by a preeminent psychologist.  *Id.*  This second examination resulted in yet another conclusion that Judge Adams did not suffer from any temporary or permanent condition rendering him unable to discharge the duties of his office.  *Id.*  It also found that Judge Adams had a reasonable and principled basis for refusing to take a compelled examination.

Judge Adams approached the hearing with the belief that the Special Committee would honor the Judicial Conduct and Disability Act and its governing rules and afford him his right to

proper notice of the charges against him, to call witnesses at any hearing, and to request the issuance of subpoenas. Compl., ¶ 31. Both the Act and the governing rules also required the Special Committee's proceedings to be investigative, not adversarial. *Id.* Instead, on the eve of the hearing, the Special Committee produced exhibits and witness statements to Judge Adams that sought to introduce new, previously undisclosed allegations from as long as five and a half years earlier. *Id.*, ¶ 33. It also rejected *all* eleven, pre-hearing document subpoenas and the single witness subpoena requested by Judge Adams. *Id.* Despite Judge Adams' right to notice, the Special Committee also did not identify the "duties of office" allegedly affected by the unidentified mental disability about which it purportedly was concerned until after the April 2015 hearing began.[6] *Id.*, ¶ 34. The alleged duties included: (a) "maintaining a professional relationship" with colleagues; (b) "shouldering [] responsibilities as a member of th[e] court;" and (c) refraining from "making unfounded and destructive attacks" on colleagues. *Id.* The Special Committee has never to date identified the alleged mental disability about which it purportedly was concerned. *Id.*

Even though the April 2015 hearing was supposed to be an investigation, not an adversarial trial, the Special Committee excluded evidence from the two psychiatrists who had examined Judge Adams and had concluded that he did not suffer from any type of disability that rendered him unable to discharge the duties of his office. Compl., ¶ 35. Judge Adams had submitted two witness statements and reports of examination from the local, board certified psychiatrist who had

---

[6]     While Judge Adams' counsel was questioning a witness on the first day of the hearing, the Special Committee informed him that the relevant duties for purposes of the hearing were the duties referenced in the Special Committee's March 23, 2014 request to Judge Boggs to expand the scope of the investigation to include whether Judge Adams suffered from a mental disability. Compl., ¶ 34. The Special Committee had not provided Judge Adams with a copy of the March 23, 2014 request until exhibits and witness statements were exchanged on the eve of trial, and the Special Committee failed to inform Judge Adams at the time that the duties at issue were the duties cited in the request. *Id.*

examined him initially in late 2013.  *Id.*  Judge Adams also proffered a summary of expected testimony and the 70-page curriculum vitae of the nationally renowned psychiatrist and leading expert on legal and ethical issues in medicine and psychiatry who examined him before the hearing. *Id.*  Judge Adams intended the nationally renowned psychiatrist and expert to testify and be cross-examined at the hearing.[7]  *Id.*

Rather than allow this testimony, the Special Committee made a mid-hearing demand for all of Judge Adams' mental health records that was required to be satisfied in less than 24 hours. *Id.*, ¶ 36.  The demand included requests for drafts of reports and any and all notes or other information held by any of the psychiatrists listed by Judge Adams as witnesses.  *Id.*  When that impossible demand was not satisfied in the timeframe unilaterally imposed by the Special Committee, all of Judge Adams' mental health evidence was excluded and not considered in any manner.  *Id.*, ¶ 37.  In fact, the Special Committee went as far as to state:  "[T]he Committee will ignore any statements made by Judge Adams or any statements made by [counsel] that are suggestive that some mental health professional has suggested that there is not a serious psychological or mental issue with him."  *Id.*

Judge Adams also sought to introduce witness statements and sworn declarations from more than thirty individuals who have interacted with him on a daily basis for years, including court personnel and attorneys who have appeared before him regularly, and the live testimony of at least one judicial official.[8]  Compl., ¶ 41.  The Special Committee threatened at the hearing that,

---

[7]     The Special Committee also chose to exclude the proffered evidence from a nearly-ten-year acquaintance of Judge Adams who was also a board-certified psychiatrist.  Compl., ¶ 40.

[8]     Judge Adams was even precluded from cross-examining one of the complainants, despite the fact that the complainant had attended and observed the entirety of the evidentiary hearing.

if Judge Adams submitted these individuals' witness statements or had them give live testimony, it would call an unspecified number of unidentified witnesses to testify against Judge Adams in rebuttal.  *Id.*  Neither the identities of any such rebuttal witnesses nor the subject matter of their testimony had been disclosed to Judge Adams before the April 2015 hearing or since.  *Id.* Moreover, the rules drafted by the Special Committee made no mention of rebuttal witnesses.  In fact, the mere mention of rebuttal witnesses only highlighted the fact that the Special Committee was improperly treating the hearing as adversarial.  *Id.*  Faced with the Special Committee's threat, Judge Adams felt compelled not to call these additional witnesses.[9]  *Id.*

Given the way the hearing was conducted, it comes as no surprise that the Special Committee's July 10, 2015 report and recommendations found against Judge Adams on every aspect of the investigation.  Compl., ¶ 44.  It found Judge Adams committed misconduct by issuing the February 1, 2013 show cause order and by refusing to cooperate with the Special Committee's investigation by declining to undergo the compelled psychiatric evaluation demanded by the committee.  *Id.*  The Special Committee also found it could not determine whether Judge Adams suffered from a disability.  *Id.*  It recommended that Judge Adams be publicly reprimanded, ordered to undergo a psychiatric examination by a psychiatrist selected by the Special Committee, not be assigned any new cases for period of two years, and have his entire docket of current cases transferred to other judges, among other sanctions.  *Id.*  It also ordered that Judge Adams "shall submit to any treatment or counseling deemed necessary by the psychiatrist."  *Id.*  Further, it

---

[9]     Judge Adams sought to avoid even the possibility of an antagonistic hearing by seeking to have the complaint transferred out of the Sixth Circuit.  Recent public developments have suggested that resolution of the type of complaint filed against Judge Adams by those within the Sixth Circuit "may weaken public confidence in the process."  Judge Adams' transfer request was summarily denied.

asserted that, should Judge Adams continue to refuse to undergo a psychiatric examination, he was requested to voluntarily retire.  *Id.*

### B.      Judicial Council.

On August 17, 2015, Judge Adams filed a timely response to the Special Committee's report and recommendations at the Judicial Conference, and a hearing on the report and Judge Adams' response was held on September 10, 2015.  Compl., ¶ 45.  On February 22, 2016, the Judicial Council issued an Order and Memorandum that largely adopted the Special Committee's recommendations.  *Id.*, ¶ 46.  It found Judge Adams "committed misconduct by refusing to cooperate with the Special Investigating Committee's request that he undergo a mental-health evaluation with a psychiatrist selected by the Special Investigating Committee, as it prejudiced the effective and expeditious administration of this matter."  Order and Mem., *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (6th Cir. Jud. Council Feb. 22, 2016) at 27.   The Judicial Council also found "[s]ufficient evidence exists to merit further investigation into whether Judge Adams suffers from a mental or emotional disability that renders him unable to discharge the duties of office."  *Id.* at 29.  It then ordered: "Judge Adams shall undergo a mental-health evaluation by a psychiatrist selected by the Special Investigating Committee . . . Judge Adams shall submit to any treatment or counseling deemed necessary by the psychiatrist."  *Id.* at 29-30.  It also ordered that "no new cases shall be assigned to Judge Adams for a period of two years, and his present docket shall be transferred to other judges."  *Id.* at 29.  It further ordered that "[t]he Special Investigating Committee shall maintain jurisdiction for two years to ensure that Judge Adams does

not engage in additional inappropriate behavior involving magistrate judges, whether in his official functions or otherwise."[10]  *Id.*

### C.      Judicial Conference Committee on Judicial Conduct and Disability.

On April 4, 2016, Judge Adams filed a timely petition for review of the Judicial Council's February 22, 2016 Order and Memorandum.  Compl., ¶ 49.  In a Memorandum of Decision issued on August 14, 2017, the Review Committee largely upheld the Judicial Council's Order and Memorandum.  *Id.*, ¶ 50.  It affirmed the Judicial Council's finding that Judge Adams' actions relating to the February 1, 2013 show cause order constituted misconduct and upheld the Judicial Council's public reprimand.  *Id.*  It also affirmed the Judicial Council's finding that Judge Adams' objection to undergoing a compelled psychiatric examination by a psychiatrist selected by the Special Committee constituted misconduct, although in so ruling, it acknowledged that it was a matter of first impression under the Judicial Conduct and Disability Act.  *Id.*  It likewise affirmed the Judicial Council's order that Judge Adams undergo the compelled examination and further ordered that he "shall submit to any treatment or counseling deemed necessary by the psychiatrist." *Id.*  It left untouched the Judicial Council statement that, "[s]hould Judge Adams refuse to undergo a mental-health evaluation by a psychiatrist chosen by the Special Investigating Committee, the Judicial Council intends to request that Judge Adams voluntarily retire."  *Id.*

The Review Committee's Memorandum of Decision, however, vacated the Judicial Counsel's Order and Memorandum that "no new cases shall be assigned to Judge Adams for a period of two years, and his present docket shall be transferred to other judges," finding that the

---

[10]      It should be noted that the two-year retention of jurisdiction affirmed by the Review Committee expired by its own terms on February 22, 2018 – months before the June 27, 2018 order relied upon in the pending motion to dismiss for mootness.  Arguably, the June 27, 2018 is *ultra vires* because the Judicial Council's jurisdiction had lapsed four months before it was issued.

"Judicial Council did not include in its Order any specific findings regarding whether Judge Adams's conduct has adversely affected his ability to discharge the adjudicative duties."  Compl., ¶ 51.  But the Review Committee did not contest the legal propriety of the Judicial Council's order if accompanied by appropriate findings, holding that, while "curtailment of Judge Adams's docket is not supported by the record as it exists at this time . . . [w]e cannot rule out the appropriateness of such a sanction should sufficient evidence establish Judge Adams's incapacity."  *Id.*

The Review Committee also held that, "should Judge Adams refuse to submit to the mental health examination ordered by the Judicial Council and affirmed by this Committee, sanctions for Judge Adams's continued failure to cooperate – including the prohibition of the assignment of new cases on a temporary basis for a time certain – may be warranted subject to the Judicial Council's sound discretion."  Compl., ¶ 52.

**D.      Litigation.**

After the Review Committee's decision, efforts were again made to compel a psychiatric examination.  Once again, Judge Adams refused to undergo such an examination and was forced to file litigation to protect his rights.  It is undisputed that a portion of this litigation is directly tied to the attempts to compel Judge Adams to undergo a mental health examination.  However, as noted above, this litigation also challenges the lack of due process throughout the proceedings against Judge Adams – a challenge that is not limited to the mental health examination.

**E.      June 27, 2018 Order of the Judicial Council.**

As the Court's docket reflects, while this litigation was pending, the parties engaged in settlement discussions, but were unsuccessful.  Instead, the Judicial Council unilaterally issued a further order on June 27, 2018.  The order spans five pages, although the first two pages do little more than recount the procedural history of the matter from the Judicial Council's perspective.

They reiterate that the Judicial Council previously found Judge Adams committed misconduct by refusing to undergo a psychiatric examination conducted by a psychiatrist selected by the Special Committee.

The order's third page sheds some light on what occurred after the Review Committee issued its decision. Specifically, the Judicial Council returned the matter to the Special Committee. When Judge Adams refused to submit to the examination ordered by the Judicial Council, the Special Committee recommended no new cases be assigned to Judge Adams for sixth months as a sanction. Order and Mem., *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (6th Cir. Jud. Council June 27, 2018) at 3. The Judicial Council convened on March 20, 2018 to consider the Special Committee's recommendation. *Id.* at 4. The June 27, 2018 order then concludes:

> At the March 20 meeting, the Judicial Council discussed the position of the judges of the Northern District of Ohio that Judge Adams's behavior had improved and stabilized. The judges reported that there had been no recurrence of the sort of behavior that occasioned the misconduct finding. Moreover, there had been no recent reports of courtroom misbehavior.
>
> After reassessment, the Judicial Council declined to halt assignment of cases to Judge Adams. Instead, the Judicial Council, hopeful that Judge Adams can serve without any further misconduct, imposes no further sanction at this time. The Judicial Council will review the matter in one year and will, if no further misconduct has occurred, dismiss the complaint. The Judicial Council notes that the judges of the Northern District of Ohio unanimously favor this result. The Judicial Council retains jurisdiction over this matter.

*Id.* A footnote asserts, "Courtroom behavior was not addressed in the initial complaints, but some evidence concerning courtroom and case-related behavior was developed during the investigation."[11] *Id.* at 4, n.2.

---

[11]     Judge Adams has presided over eight jury trials in 2018 to date, including the trial of a defendant charged with providing material support to ISIS. He would welcome a review of the juror surveys completed following those trials. Similarly, Judge Adams has conducted thousands of proceedings during the pendency of the disciplinary process and would welcome review of those matters, since approximately 99% occurred on the record.

This footnote is yet another example of the hide-the-ball tactics utilized throughout the complaint process.  No claim or concern was made or raised at the April 2015 hearing that Judge Adams does not or cannot maintain his full docket of cases or is unable to make rulings.  As one of the complainants acknowledged in his testimony at the hearing, "That's not involved here . . . his handling of his docket has been appropriate."  Another judge testified that Judge Adams is "a very bright judge.  He writes very good opinions."  As noted previously, however, the Special Committee threatened to provide evidence of courtroom behavior in rebuttal to any character evidence offered by Judge Adams – evidence that has *never* been made known to Judge Adams.  The June 27, 2018 order's footnote once again repeats this assertion that "case-related behavior" was developed during the investigation.  Not a single communication to Judge Adams has ever revealed the details or nature of such case-related behavior, despite its apparent continued relevance to the Special Committee and Judicial Council.  This conduct only serves to highlight that Judge Adams has properly pleaded a violation of his due process rights that remains ripe for adjudication.

Noticeably absent from the June 27, 2018 order is any statement formally rescinding, withdrawing, or vacating the February 22, 2016 order that Judge Adams undergo a psychiatric examination.  The earlier order, which contended there was sufficient evidence to warrant ordering Judge Adams to undergo a compelled mental examination and submit to any recommended treatment, still appears on the Sixth Circuit's website.  Order and Mem., *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (6th Cir. Jud. Council Feb. 22, 2016) at 29-30.  It is now joined by the June 27, 2018 order, which repeats these same assertions before concluding that "no further sanction" would be imposed "at this time."   Order and Mem., *In re Complaint of Judicial Misconduct*, No. 06-13-90009 (6th Cir. Jud. Council June 27, 2016) at 2 and 4.  The new order

also reaffirms that the Judicial Council does not believe there is any limit to its ability to continue to extend its jurisdiction over Judge Adams or revisit its own prior orders at any time, for any reason, all of which demonstrates that a live controversy still exists.

## III.   ARGUMENT.

According to Defendants, the Judicial Council's June 27, 2018 order "with[drew] the requirement that Judge Adams undergo an evaluation." Defs' Mem. at 21.  Defendants argue that "[b]ecause Plaintiff is no longer required to undergo an evaluation, he can no longer allege any harm from being required to do so." *Id.* at 24.  They therefore conclude that the case is moot. Defendants are incorrect.

### A.   The Express Language of the June 27, 2018 Order Contradicts Defendants' Mootness Argument Regarding the Compelled Examination Order.

The June 27, 2018 order expressly states that "no further sanction" will be imposed.[12]  The plain meaning of these words contradicts Defendants' mootness argument.  "[N]o further sanction" obviously means no additional sanction will be imposed on Judge Adams for declining to undergo the compelled examination ordered by the Judicial Council on February 22, 2016.  It does not mean, nor is it reasonable to interpret the June 27, 2018 order to mean, that the compelled examination order has been vacated or withdrawn.  Surely, if the Judicial Council had intended to reconsider its order requiring Judge Adams to undergo a compelled psychiatric examination, it could have done so – and said so – easily.  It could have stated that the examination order was being lifted, modified, rescinded, superseded, vacated, or withdrawn.  It used no words or language to this effect.  The examination order remains in effect, and the case is not moot.

---

[12]   Of course, the order also includes the further caveat "at this time."  Judge Adams will address this significant limitation in subsection III.C, below.

This conclusion is reinforced by the context in which the "no further sanction" statement was made.  The Judicial Council was considering the Special Committee's recommendation that Judge Adams be assigned no new cases for a period of six months as a sanction for refusing to comply with the compelled examination order.  It rejected that recommendation and expressly decided against imposing any "further" – or additional – sanction.  The Judicial Council did not rescind or withdraw anything.  Any claim to the contrary is at odds with the order's plain language.

### B.   Defendants' Ignore Key Components of Judge Adams' Other Claims.

Judge Adams' complaint challenges both the compelled examination order and the Judicial Council's finding that Judge Adams committed misconduct by objecting in good faith to the Special Committee's examination.  Compl., ¶¶ 60, 65, 69, 75, 79, and 83.  It also challenges the retention of jurisdiction over him, among other claims.  *Id.*, ¶¶ 87-89.  Defendants' mootness argument focuses on the compelled examination order only.  Defendants do not even mention these other challenges, let alone argue that the June 27, 2018 order renders them moot.  By failing to address these other claims, Defendants concede that they remain at issue and are not moot.   The June 27, 2018 order's declaration that "no further sanction" will be imposed on Judge Adams "at this time" has no bearing whatsoever on these separate claims, especially the finding of misconduct for objecting to the Special Committee's examination.

In addition, Judge Adams' challenges to the compelled examination order do not simply seek to enjoin the order's enforcement.  Judge Adams also seeks to have the order declared unconstitutional, *ultra vires*, lacking a reasonable basis, and violative of his due process rights.  Declaratory relief will help to redress the stigmatization and harm the order has caused to Judge Adams' reputation.  It is more than sufficient to avoid mootness.  *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the U.S.*, 264 F.3d 52, 57

(D.C. Cir. 2001).  Like here, the judicial council and review committee in *McBryde* tried to argue that Judge McBryde's claims were moot, but the Court found the public reprimand issued to Judge McBryde caused sufficient injury to the judge's reputation to avoid mootness even though the sanctions entered against him had already run their course.  "Were Judge McBryde to prevail on the merits it would be within our power to declare unlawful the defendants' issuance of [the public reprimand] and thereby to relieve Judge McBryde of much of the resulting injury."  *Id.*

The same is true here.  Judge Adams' injury is obviously substantial.  Both the examination order and the June 27, 2018 order declaring "no further sanction" will be imposed "at this time" are posted on the Sixth Circuit Court of Appeals' website.  The examination order has received substantial media attention and is noted in the Wikipedia entry on Judge Adams.[13]  For an official entity like the Judicial Council to even question the mental health of a judge in its circuit is a substantial blow to the judge's reputation.  To order a judge to undergo a compelled psychiatric examination is far worse.  Judge Adams is only aware of one other instance in the entire history of the federal judiciary – the case of Judge McBryde – in which a sitting federal judge was ordered to undergo a psychiatric examination.  *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conf. of the U.S.*, 83 F. Supp.2d 135, 142 (D.D.C. 1999).  The issue was not pursued in Judge McBryde's case, however (*id.* at 142 n.5), and only in Judge Adams' case was the order upheld by the Review Committee.

Although Judge Adams' injury and corresponding interest in the outcome of his lawsuit are both substantial, "[a]s long as the parties have a concrete interest in the outcome of the litigation, the case is not moot notwithstanding the size of the dispute."  *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 571 (1984).  The substantial injury to Judge Adams' reputation

---

[13]     *See* https://en.wikipedia.org/wiki/John_R._Adams.

caused by the compelled examination order can be remedied by a ruling in his favor.  It is not "completely and irrevocably eradicated" by the June 27, 2018 order's declaration that "no further sanction" will be imposed on Judge Adams "at this time."  *True the Vote, Inc. v. IRS*, 831 F.3d 551, 561 (D.C. Cir. 2016).  Moreover, Judge Adams' reputational injury is not merely a secondary or collateral consequence of the compelled examination order.  *McBryde*, 264 F.3d at 57-58 (citing *Penthouse Int'l Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991)).  It is a direct result of the order.  *Id.*  Were Judge Adams to prevail on the merits of his legal challenges to the compelled examination order and succeed in having the order declared unlawful, it would afford him tangible relief from the injury resulting from the order.  The June 27, 2018 order does not render Judge Adams' claims moot.

### C.    Defendants Have Not Met Their Heavy Burden Under the Voluntary Cessation Doctrine.

Even if the Judicial Council had rescinded or withdrawn the compelled examination order, the case or controversy between Judge Adams and Defendants over the order has not gone away. *True the Vote, Inc.*, 831 F.3d at 561 (noting the difference between a controversy "having gone away, and simply being in a restive stage").  "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of that practice.'"  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "[I]f it did, the courts would be compelled to leave '[the] defendant . . . free to return to his old ways.'"  *City of Mesquite*, 455 U.S. at 289 n.10 (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).  "This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion."  *W. T. Grant Co.*, 345 U.S. at 632.

The standard for determining whether a case has been mooted by a defendant's voluntary cessation of challenged conduct is stringent: "'A case might become moot if subsequent events made it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Friends of the Earth, Inc.*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n., Inc.*, 393 U.S. 199, 203 (1968) (emphasis added)). "The 'heavy burden of persuading' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.*

Defendants make no effort to argue they have met this "heavy burden." Nor could they. The same June 27, 2018 order that is alleged to have rescinded the compelled examination order contains several significant limitations. First and foremost, the June 27, 2018 order only asserts that no further sanctions will be imposed on Judge Adams "at this time." June 27, 2018 Order at 4. It also states that the Judicial Council will "review the matter in one year." *Id.* at 4. It promises to dismiss the complaint against Judge Adams only "if no further misconduct has occurred" in this additional, one-year period. *Id.* And it asserts that the Judicial Counsel "retains jurisdiction over this matter." *Id.* These express limitations provide an exact roadmap by which Judge Adams could reasonably expect to receive a further, compelled examination order. They make clear that the dispute between Judge Adams and Defendants over the Judicial Council's power to order a compelled psychiatric examination and the legality of such an examination in this case has not gone away but is simply in a "restive stage" for at least an additional year. *True the Vote, Inc.*, 831 F.3d at 561. As the Court held in *True the Vote, Inc.*:

> A violation of right that is "suspended until further notice" has not become the subject of voluntary cessation, with no reasonable expectation of resumption, so as to moot litigation against the violation of rights. Rather, it has at most advised the victim of the violation – "you're alright for now, but there may be another shoe falling."

*Id.* at 562.

Indeed, to the extent that the June 27, 2018 order backs away from the compelled examination order, it is because "Judge Adams's behavior had improved and stabilized" and there has "been no recurrence of the sort of behavior that occasioned the misconduct finding." June 27, 2018 Order at 4. Far from the Judicial Council renouncing its claimed power to order Judge Adams to undergo a compelled psychiatric examination or the legality of such an examination in this case, the June 27, 2018 order asserts it was *Judge Adams* who changed his behavior, obviating the purported need for the examination at least temporarily. As a result, it is not "absolutely clear" the Judicial Council's order requiring Judge Adams to undergo a compelled psychiatric examination will not recur. *Friends of the Earth, Inc.*, 528 U.S. at 189; *see Global Tel*Link v. FCC*, 866 F.3d 397, 407 (D.C. Cir. 2017) (the fact that the FCC "abandoned" the defense of a challenge to its intrastate rate caps did not moot the case under the doctrine of voluntary cessation where the order "that gave rise to the petitions for review is still in force"); *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1175 (9th Cir. 2009) ("the government cannot escape the pitfalls of litigation by simply giving in to a plaintiff's individual claim without renouncing the challenged policy, at least where there is a reasonable chance of the dispute arising again") (citation and internal quotations omitted).

Nor can Defendants meet their heavy burden by arguing it is "speculative" that Judge Adams will be ordered to undergo a compelled examination in the future. Defs' Mem. at 25. Defendants' argument in this regard gets the burden of proof backwards. Judge Adams does not have to prove the Judicial Council is likely to order him to undergo a compelled examination. Rather, Defendants must prove it is "highly unlikely" the Judicial Council will order such an examination. In *Rosemere*, the EPA argued it was "speculative" to suggest the parties would again

be involved in the kind of dispute that was the subject of the lawsuit.  In rejecting this argument, the Court observed:

> There are several problems with the EPA's argument.  For one, it impermissibly attempts to shift the burden to [plaintiff] Rosemere to defeat mootness.  As we have stated, it is the [defendant] EPA that bears the "heavy burden" in this case. . . . The EPA cannot meet this burden solely by claiming that Rosemere has not done enough to show the likelihood of further [disputed] delays. . . . Rather, the EPA must *demonstrate why repetition of the wrongful conduct is highly unlikely.*

581 F.3d at 1173 (citations omitted) (emphasis added).  The same is true here.  Defendants have not demonstrated that repetition of a compelled examination order or some further sanction to try to enforce the examination order is highly unlikely.  They have failed to make the stringent showing required under the "voluntary cessation" doctrine.

## IV.    CONCLUSION.

For the foregoing reasons, Judge Adams respectfully requests that Defendants' motion to dismiss on mootness grounds be dismissed.

## **REQUEST FOR ORAL HEARING**

Plaintiff respectfully requests an oral hearing pursuant to LCvR 7(f).

Dated:  October 24, 2018

Respectfully submitted,

JUDICIAL WATCH, INC.

*/s/ Paul J. Orfanedes*
Paul J. Orfanedes
D.C. Bar No. 429716

*/s/ Robert D. Popper*
Robert D. Popper
D.C. Bar No. 1023592
425 Third Street SW, Suite 800
Washington, DC 20024
(202) 646-5172
porfanedes@judicialwatch.org
rpopper@judicialwach.org

*Counsel for Plaintiff*