UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE HON. JOHN R. ADAMS, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 17-1894 (ABJ) |
| THE JUDICIAL COUNCIL OF THE SIXTH CIRCUIT, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case arises out of an investigation undertaken by the Judicial Council of the Sixth Judicial Circuit ("Judicial Council") into the conduct of the Honorable John R. Adams, United States District Judge for the Northern District of Ohio. The investigation was conducted pursuant to the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351–64, and in his lawsuit, plaintiff challenged the Judicial Council's finding and the terms of the order it imposed in February 2016, as well as a decision by the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States approving the challenged finding and order. The matter has been stayed at various times during the pendency of renewed administrative proceedings before the Judicial Council, and those proceedings have now concluded. The original complaint against the Judge has been dismissed, and he is no longer subject to any of the requirements in the challenged order. The Court will therefore dismiss the case as moot, and it will deny plaintiff's motion to amend the complaint because the proposed amendment would not revive the matter. While the Court does not doubt that the plaintiff suffered consequences while fighting to clear his name, it expects that he understands, better than most civil litigants, the limits on a federal court's ability

to right every wrong and the constitutional need for a live case or controversy. Hopefully, he will take some comfort in the fact that at the end of the day, he succeeded in his quest to have the Judicial Counsel withdraw its objectionable requests.

## BACKGROUND

### I. Statutory Scheme

In 1980, Congress enacted the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351–64 ("the Act"), to established procedures for the judicial branch to address complaints against federal judges. S. Rep. No. 96–362, at 1, 96th Cong. (1st Sess. 1979). The Act provides a mechanism for the judiciary to address concerns about a federal judge's mental or physical disability or "conduct prejudicial to the effective and expeditious administration of the business of the courts." 28 U.S.C. § 351(a). "Any person" who has reason to believe that a judge has engaged in such prejudicial conduct may file a written complaint, along with a brief statement of the facts constituting such conduct, with the Clerk of the Court of Appeals. *Id*. Alternatively, the chief judge of the circuit may "identify a complaint" on the basis of available information. *Id.* § 351(b). Any complaint must be transmitted to the subject judge, *id.* § 351(c), and "expeditiously review[ed]" by the chief judge. *Id.* § 352(a).

After reviewing a complaint, the chief judge has several options. Where there are no issues of fact, or where corrective action has been taken or intervening events make further action unnecessary, the chief judge may dismiss the complaint or conclude the proceeding. *Id.* § 352(b)(1)–(2). Or, the chief judge may appoint a "special committee" comprised of the chief judge and an equal number of circuit and district judges "to investigate the facts and allegations contained in the complaint." *Id.* § 353(a)(1). The chief judge must provide notice of his action to the complainant and the subject judge. *See id.* §§ 352(b), 353(a)(3). If the chief judge dismisses the complaint or concludes the proceeding, an aggrieved complainant or subject judge may file a

petition for review with the circuit's judicial council. *Id.* § 352(c). The denial of such a petition "shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise." *Id.*

If the chief judge concludes that additional factfinding is necessary, the chief judge must appoint a special committee to "conduct an investigation as extensive as it considers necessary." *Id.* § 353(c). The special committee then "shall expeditiously file a comprehensive written report thereon with the judicial council of the circuit," setting forth the committee's findings and recommendations for "necessary and appropriate action" by the judicial council. *Id.*

Upon receiving the special committee's report, the judicial council "may conduct any additional investigation which it considers to be necessary," *id.* § 354(a)(1)(A), and either dismiss the complaint, *id.* § 354(a)(1)(B), or "take such action as is appropriate to assure the effective and expeditious administration of the business of the courts within the circuit." *Id.* § 354(a)(1)(C). Judicial council action may include censuring or reprimanding the subject judge, *id.* § 354(a)(2)(A)(ii)–(iii), or ordering that no further cases be assigned to the subject judge "on a temporary basis for a time certain." *Id.* § 354(a)(2)(A)(i). The judicial council may ask the subject judge to take early retirement voluntarily, *id.* § 354(a)(2)(B)(ii), but it may not order an Article III judge to be removed from office. *Id.* § 354(a)(3)(A).

When a judicial council has taken action following the receipt of a special committee's report, section 357 of the Act authorizes the complainant or subject judge to file a petition for review with the Judicial Conference of the United States through its Committee on Judicial Conduct and Disability. *Id.* § 357(a); *see id.* § 331. The decisions of the Judicial Conference are not subject to judicial review. *Id.* § 357(c) ("Except as expressly provided in this section and section 352(c), all orders and determinations, including denials of petitions for review, shall be final and conclusive and shall not be judicially reviewable on appeal or otherwise.").
3

## II.     Investigation of Plaintiff

According to the complaint, the Judicial Council proceedings against the plaintiff arose out of a show cause order he issued on February 1, 2013, directing a Magistrate Judge "to explain his failure to issue a timely decision in a Social Security appeal." Compl. [Dkt. # 1] ¶ 13. The plaintiff stated in his complaint that the "timeliness of decisions in Social Security cases had been a recurrent problem, and, as a result, it was [his] practice to issue scheduling orders for Social Security appeals." *Id.* When plaintiff was informed that it was a "human error [that] caused a miscalculation of the deadline," he "deemed the order satisfied and sealed the filings that same day," resulting in "no further consequences." *Id.*

Shortly thereafter, on February 15, 2013, four other judges on the District Court for the Northern District of Ohio filed a judicial complaint against the plaintiff. Compl. ¶ 14. The complaint alleged that, among other things, plaintiff "lacked authority to issue the order" to the Magistrate Judge, the order constituted "an extreme, unwarranted, and unjustified abuse of judicial discretion," plaintiff had a "strained relationship with the other judges of the court," and plaintiff had "withdrawn from participation in the governance and social life of the Court." *Id.* The acting chief judge appointed a special committee ("the Special Committee") to investigate the complaint. *Id.* ¶ 15. In March 2013, plaintiff answered the complaint, and he appeared for an interview with the Special Committee in August 2013. *Id.* ¶¶ 16–17. During the interview, he answered the Special Committee's questions and "attempted to resolve the complaint informally by offering to withdraw the then-sealed order and related filings and by agreeing to attend judges' meetings and any court committee meetings to which the District Court's chief judge might appoint him, among other measures." *Id.* ¶ 17.

The Special Committee sought a psychiatric evaluation of the plaintiff as part of its investigation. Compl. ¶ 18. Plaintiff objected and provided the Committee with a report from a

4

psychiatrist of his choosing, who reported that plaintiff "did not suffer any diagnosable mental disorder." *Id.* ¶ 19.  The Special Committee declined to accept the report, *id*. ¶ 22, and on May 27, 2014, it expanded the investigation to determine whether plaintiff suffered from a mental disability.  *Id.* ¶ 23.

In August 2014, the Special Committee directed plaintiff to provide any medical records related to his mental or emotional treatment, counseling, evaluation, or diagnosis.  Compl. ¶ 24.  Plaintiff initially objected, but ultimately informed the Special Committee "that he had no such records."  *Id.*  In September 2014, plaintiff again objected to another request by the Committee that he undergo an independent psychiatric evaluation.  *Id.* ¶ 25.

In December 2014, the Special Committee expanded the investigation further to include whether plaintiff "committed misconduct by declining to undergo the compelled examination," Compl. ¶ 26, and a hearing on the complaint was set for April 2015.  *Id.* ¶ 29.  Before the hearing, plaintiff voluntarily underwent psychological testing and a second psychiatric examination, both with professionals of his choosing.  *Id.* ¶ 30.  They concluded that plaintiff "does not suffer from a temporary or permanent condition rendering him unable to discharge the duties of his office." *Id.*  In April 2015, the Special Committee held a hearing on the matter, and it excluded the results of the examinations he had undertaken voluntarily, along with the witness statements, summaries, reports, and live testimony that he proffered.  *Id.* ¶¶ 32–37.

On July 10, 2015, the Special Committee issued its report and recommendations to the Judicial Council.  Compl. ¶ 44.  It found that plaintiff committed misconduct by issuing the February 1, 2013 show cause order, and also by refusing to cooperate with the Special Committee's investigation by declining to undergo the psychiatric evaluation it had insisted upon.  *Id*.  It also found that it could not determine whether plaintiff suffered from a disability.  *Id*.  Based on these

5

findings, the Special Committee recommended a series of sanctions, including: a public reprimand; a requirement to undergo a psychiatric examination by a psychiatrist selected by the Special Committee; and an order transferring plaintiff's entire docket of current cases to other judges, coupled with a bar on his receipt of any new cases for period of two years. *Id.* The Special Committee also ordered that plaintiff "shall submit to any treatment or counseling deemed necessary by the psychiatrist," and if he refused, that he be asked to voluntarily retire. *Id.*

On February 22, 2016, the Judicial Council issued an Order and Memorandum that largely adopted the Special Committee's recommendations. Compl. ¶ 46; *see* In re: Complaint of Judicial Misconduct, No. 06-13-90009, Order and Mem. [Dkt. # 10-2] ("2016 Council Order") at 41–70.[1] It ordered that "no new cases shall be assigned to Judge Adams for a period of two years, and his present docket shall be transferred to other judges," that plaintiff undergo a mental health evaluation by a psychiatrist selected by the Committee and submit to any treatment or counseling deemed necessary by the psychiatrist, and that the Committee would maintain jurisdiction for two years to ensure that plaintiff did not "engage in additional inappropriate behavior involving magistrate judges, whether in his official functions or otherwise." 2016 Council Order at 69.

On April 4, 2016, plaintiff filed a petition for review of the 2016 Council Order with defendant, the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States (the "Review Committee"). Compl. ¶ 49.

On August 14, 2017, the Review Committee issued its Memorandum of Decision. Mem. of Decision [Dkt. # 10-2] ("2017 Review Decision") at 1–40; Compl. ¶ 50. It affirmed the public reprimand of plaintiff, upheld the order that he undergo a psychiatric examination and submit to

---

1  The page cites refer to the page numbers appearing at the top of the PDF document as it is docketed on the court's Case Management/Electronic Case File.

6

any treatment or counseling deemed necessary, and retained the Special Committee's jurisdiction over plaintiff for two years, but vacated the Judicial Council's order on case reassignments. 2017 Review Decision at 40 (finding that "the Judicial Council did not include in its Order any specific findings regarding whether [plaintiff's] conduct has adversely affected his ability to discharge the adjudicative duties of his office").

The Review Committee further held that "should [plaintiff] refuse to submit to the mental health examination ordered by the Judicial Council and affirmed by this Committee, sanctions for [plaintiff's] continued failure to cooperate – including the prohibition of the assignment of new cases on a temporary basis for a time certain – may be warranted subject to the Judicial Council's sound discretion." 2017 Review Decision at 39; Compl. ¶ 52. Both the 2016 Council Order and 2017 Review Decision were published on August 14, 2017 on the Review Committee's website. Compl. ¶ 56.

### III.    Proceedings Before the Court

On September 19, 2017, plaintiff filed a seven-count complaint in this court, seeking declaratory and injunctive relief against the Judicial Council of the Sixth Circuit and its chairperson, Chief Judge R. Guy Cole, and the Committee on Judicial Conduct and Disability of the Judicial Conference of the United States and its chairperson, The Honorable Anthony J. Scirica.

The complaint includes five claims alleging that the Act is unconstitutional on its face. Count I asserts that the definition of a disability under the Act is too vague to comport with the due process clause of the Fifth Amendment. Compl. ¶¶ 57–61. Count II asserts that neither the Act nor the Constitution authorize defendants to compel a judge to undergo a psychiatric examination, so the compelled examination in plaintiff's case is *ultra vires* and unconstitutional. *Id.* ¶¶ 62–66. Count III asserts that the Act's delegation of investigative authority to a special committee to conduct an investigation "as extensive as it considers necessary," including to

compel a psychiatric examination, is unconstitutionally vague. *Id.* ¶¶ 67–70. Count IV characterizes a compelled psychiatric examination as a "search" covered by the Fourth Amendment, and it asserts that the Act is unconstitutional given the lack of a requirement that the search be authorized by a neutral magistrate based on probable cause. *Id*. ¶¶ 71–76. And Count VII claims that the Act violates the Constitution insofar as it provides for the removal of an Article III judge by means other than impeachment. *Id*. ¶¶ 85–90.

The complaint also raises two as-applied challenges. Count V, entitled "Fourth Amendment – As Applied Challenge," asserts that defendants ordered plaintiff to submit to the psychiatric examination without a warrant issued on probable cause. Compl. ¶¶ 77–80. And Count VI, labelled "Fifth Amendment – As Applied Due Process Violation," asserts that plaintiff was deprived of his right to due process because he did not receive proper notice of the charges against him; he was denied the right to call medical and lay witnesses at the April 2015 hearing; and the hearing was conducted as an adverse, accusatorial proceeding, and not the investigative proceeding required by the Act. *Id*. ¶¶ 81–84.

The individual judges named as defendants were voluntarily dismissed on November 17, 2017. *See* Stipulation of Dismissal of Individual Defs. [Dkt. # 9].

On December 21, 2017, the remaining defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6). Defs.' Mot. to Dismiss [Dkt. # 10]. In the winter and spring of 2018, the Court granted the parties a number of extensions of the briefing schedule. *See* Min. Orders (Jan. 26, 2018); Min. Order (Feb. 21, 2018); Min. Order (Mar. 22, 2018); Min. Order (Apr. 20, 2018).

On June 27, 2018, the Judicial Council issued an order discontinuing any further investigation and withdrawing the requirement that plaintiff submit to a mental health evaluation.

Order and Mem. (Jun. 27, 2018) [Dkt. # 20-2].  The order stated that the Judicial Council would dismiss the complaint if there were no further issues within the following one-year period, by June of 2019.  *Id.* at 4.  In light of this development, defendants filed a motion for leave to file a second motion to dismiss on mootness grounds, Consent Mot. to Set Briefing Schedule for Second Mot. to Dismiss [Dkt. # 19], which the Court granted.  Min. Order (Sept. 5, 2018).[2]

On September 19, 2018, defendants filed their second motion to dismiss for lack of jurisdiction for mootness.  Defs.' Mot. to Dismiss on Grounds of Mootness [Dkt. # 20].  The Court entered a stay of the case pending briefing and resolution of the motion.  Min. Order (Sept. 20, 2018).  The parties completed briefing.  *See* Pl.'s Mem. in Opp. to Mot. to Dismiss for Lack of Jurisdiction on Grounds of Mootness [Dkt. # 21]; Reply Mem. in Supp. of Defs' Mot. To Dismiss on Grounds of Mootness [Dkt. # 22].

Upon review of the briefs, the Court held a status conference on February 21, 2019 to determine the parties' views about awaiting the result of the Judicial Council's one-year review before ruling the mootness issue.  *See* Min. Entry for Proceedings (Feb. 21, 2019); Tr. of Status Conference (Feb. 21, 2019) [Dkt. # 24].  Defendants agreed to the proposal, Defs.' Response to Proposal [Dkt. # 23], and plaintiff opposed it.  *See* Pl.'s Response to Proposal [Dkt. # 25].  On March 4, 2019, the Court ordered that the second motion to dismiss be held in abeyance pending completion of the Judicial Council's one-year review of the matter.  *See* Min. Order (Mar. 4, 2019).

On July 1, 2019, the parties reported that the Judicial Council had dismissed the misconduct complaint against plaintiff on June 27, 2019.  Joint Status Report [Dkt. # 26] at 1–2.  It had "conclud[ed] that no further misconduct by [plaintiff] ha[d] occurred," and ordered that the

---

2   In the interim, the Court had granted two further extensions of the briefing schedule for the first motion to dismiss, as requested by the parties.  *See* Min. Order (Jun. 21, 2018); Min. Order (Aug. 7, 2018).

requirement for him to undergo a mental health evaluation was "no longer in effect." Order of Judicial Council, Ex. 1 to Joint Status Report (Jun. 27, 2019) [Dkt. # 26-1] ("Dismissal Order"). The Judicial Council terminated its jurisdiction, ending the matter. *Id*.

Given these developments, the Court on July 8, 2019 ordered plaintiff to address why this case should not be dismissed as moot. *See* Min. Order (Jul. 8, 2019). In response, on August 28, 2019, plaintiff filed a motion to amend his complaint, *see* Pl.'s Mot. for Leave to File Am. Compl. [Dkt. # 27] ("Mot. to Amend"), which was fully briefed. *See* Defs.' Opp. to Mot. to Amend [Dkt. # 29]; Pl.'s Reply for Mot. to Amend [Dkt. # 30].

## ANALYSIS

Pending before the Court are defendants' first motion to dismiss the complaint for lack of subject matter jurisdiction, their second motion to dismiss the case as moot, and plaintiff's motion to amend his complaint. The Court will dismiss the case as moot, and deny the motion to amend because the proposed amended complaint would be subject to dismissal on mootness grounds as well.

**I.    This case is moot.**

A case becomes moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Larsen v. U.S. Navy*, 525 F.3d 1, 3–4 (D.C. Cir. 2008), quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Honig v. Doe*, 484 U.S. 305, 317 (1988) (Article III, Section 2 of the Constitution permits federal courts to adjudicate only "actual, ongoing controversies."). If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot. *See, e.g.*, *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). "Even where litigation poses a live controversy when filed, the [mootness] doctrine requires a federal court to refrain from deciding it if 'events have so transpired that [a judicial] decision will neither presently affect the

10

parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990), quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir.1990); *see also Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (noting that a case is moot when "there is nothing for [the court] to remedy, even if [it] were disposed to do so").

A plaintiff always bears the ultimate burden of showing that a court has jurisdiction over his claims. *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016), citing *Delta Air Lines v. Exp.-Imp. Bank of United States*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015); *Muhammad v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010). But where mootness is at issue, "[t]he initial 'heavy burden' of establishing mootness lies with the party asserting a case is moot, [and] the opposing party bears the burden of showing an exception applies." 223 F. Supp. 3d at 103, quoting *Honeywell Int'l v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010). "[M]ootness, however it may have come about, simply deprives [the court] of [its] power to act." *Id.*, quoting *Spencer v. Kemna*, 523 U.S. at 18.

The law recognizes, though, that a defendant cannot "automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013), citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* "[W]here the 'intervening event arguably ending any live controversy between [the parties]' is the government's own decision to end the challenged conduct, 'voluntary cessation analysis governs [the] mootness inquiry.'" *Cierco v. Lew*, 190 F. Supp. 3d 16, 23 (D.D.C. 2016), quoting *Nat'l Black Police Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997). Under that standard, a case is moot

if "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Coal. of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1189 (D.C. Cir. 2004), quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (citations and internal quotations marks omitted).

On June 27, 2019, the Judicial Council issued an order following its one-year review of the matter. *See* Dismissal Order. The Council "conclude[d] that no further misconduct by Judge Adams ha[d] occurred" and dismissed the complaint against him, "leaving in place the prior unchallenged components of the original misconduct order of February 22, 2016" and ordering that the "challenged requirements of the February 22, 2016, including the directive that Judge Adams undergo a mental health evaluation, are no longer in effect." *Id.* It ended its jurisdiction over the matter. *Id.* So there is no question that the underlying matter before the Judicial Council has been terminated.

The question for the Court is whether it is satisfied that "there is no reasonable expectation . . . that the alleged violation will recur" and whether these events "have completely and irrevocably eradicated the effects of the alleged violation." *Coal. of Airline Pilots Ass'ns*, 370 F.3d at 1189, quoting *Cnty. of Los Angeles*, 440 U.S. at 631. The fact that the Council found no further misconduct during the year-long review period and that more than a year has passed since the end of the review period provides the Court assurance that there is no reasonable expectation that the challenged actions will recur. The Judicial Council had the authority and jurisdiction to revive the challenged sanctions against the plaintiff during the one-year review period but did not.

Furthermore, there is nothing in the record to suggest that some action of the plaintiff will again provoke the chain of highly unusual circumstances that culminated in the unique order that

was challenged in this case. Courts are generally "unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." *McBryde v. Comm. to Rev. Cir. Council Conduct and Disability Orders of the Jud. Conf. of the U.S.*, 264 F.3d 52, 56 (D.C. Cir. 2001), quoting *Honig,* 484 U.S. at 320. At the time he filed the complaint, plaintiff expressed a willingness to meet his colleagues' expectations. *See* Compl. ¶ 17 (stating that plaintiff offered to withdraw the order he had issued against the Magistrate Judge and the filings related to it and to attend judges' meetings and any court committee meetings to which he was appointed). More telling, a considerable period of time has gone by, and the Council has found no cause to focus its attention on the judge again. Thus, the Court finds there is not "a reasonable expectation that [plaintiff] would be subjected to the same action again." *McBryde*, 264 F.3d at 56, quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

The Court also finds that intervening events have "completely and irrevocably eradicated the effects of the alleged violation." *Coal. of Airline Pilots Ass'ns*, 370 F.3d at 1189. The Judicial Council terminated its review of plaintiff's actions and vacated the order that he undergo a mental health exam more than a year ago. There is no pending proceeding, no ongoing review, and no shoe that can drop, and the Council has no jurisdiction to revive the matter even if it wanted to. In sum, neither the 2016 Council Order nor the 2017 Review Decision have any legal effect on the plaintiff.

Accordingly, the Court holds that the Judicial Council's dismissal of the misconduct complaint has rendered this case moot.

## II. The allegations in the proposed amended complaint about ongoing harm to plaintiff's reputation do not overcome mootness.

In light of the dismissal of the misconduct matter, plaintiff seeks to amend his complaint to add allegations about the ongoing effects of issuance of the public 2016 Council Order and 2017

13

Review Decision on his reputation.  *See* Mot. to Amend ¶¶ 3–4 (arguing that the misconduct finding and the examination order will never expire and that both, along with the Review Committee's decision affirming them, remain publicly available on defendants' websites); *see also* Proposed Am. Compl. [Dkt. # 27-1] ¶ 63.

Generally, courts "grant leave to amend a complaint '[i]n the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Atchinson v. District of Columbia*, 73 F.3d 418, 425–26 (D.C. Cir. 1996), quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to amend a complaint under Rule 15(a) "shall be freely given when justice so requires." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996), *citing* Fed. R. Civ. P. 15(a).  But "[a] district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss." *Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) (per curiam); *Anderson v. Fed. Bureau of Prisons*, No. 10-0413, 2011 WL 346079, at *1 (D.D.C. Feb. 3, 2011) ("Where amendment would be futile, however, the Court may in its discretion deny such a motion.").  An amendment is considered futile "if it would not survive a motion to dismiss or for judgment on the pleadings." *Stith v. Chadbourne & Parke, LLP*, 160 F. Supp. 2d 1, 6 (D.D.C. 2001).

The proposed amended complaint adds allegations that the challenged order and decision created a "cloud over" the plaintiff while they were in place, *see* Proposed Am. Compl. ¶¶ 53–57 (alleging, among other things, that a criminal defendant cited the misconduct finding and examination order to support his own separate misconduct complaint against the judge), and that

this harm is ongoing even though the underlying misconduct matter has been closed. *See id.* ¶ 58.[3] Accepting all the factual allegations in a complaint as true, as it must at this juncture of the proceedings, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), the Court rules that plaintiff's alleged continuing reputational harm does not overcome the mootness of the challenged actions.

The D.C. Circuit ruling in *McBryde*, 264 F.3d 52 , is instructive on this issue. That case involved a challenge by an Article III judge to sanctions imposed on him under the Act by the Judicial Council of the Fifth Circuit. *Id.* at 54. A special committee in that case conducted an investigation into alleged misconduct and recommended three sanctions: a public reprimand, a ban on being assigned any new cases for one year, and a requirement that the judge not be allowed to preside over cases involving specific lawyers for three years. *Id.* The Judicial Council of the Fifth Circuit adopted the recommendations and issued an order imposing the three sanctions. *Id.* The sanctions were stayed pending review by the Committee to Review Circuit Council Conduct and Disability Orders, and the Review Committee largely affirmed the Council's order, lifting the stay. *See id.* at 55. At that point, the sanctions went into effect, and Judge McBryde filed his lawsuit. *Id*.

By the time the case reached the Court of Appeals for the D.C. Circuit, both the one-year and the three-year sanctions had expired, but the reprimand remained in place. The D.C. Circuit

---

3   The proposed amended complaint reasserts four of the seven claims in the original complaint. Count I asserts that the Act's disability provision is unconstitutionally vague. Proposed Am. Compl. ¶¶ 61–64. Count II asserts that neither the Act nor the Constitution authorized defendants to compel plaintiff to undergo a psychiatric examination so the examination order was *ultra vires* and unconstitutional. *Id.* ¶¶ 65–69. Count III asserts that the authority the Act grants to compel psychiatric examinations of Article III judges is unconstitutionally vague. *Id.* ¶¶ 70–73. And Count IV asserts that defendants violated plaintiff's due process rights. *Id.* ¶¶ 74–77 (Count IV, "Fifth Amendment – As Applied Due Process Violation").

held that the claims challenging the two expired sanctions were moot: the court could not provide the plaintiff with any meaningful relief since "[n]o relief sought in this case would return to Judge McBryde the cases he was not assigned or otherwise improve his current situation." *McBryde*, 264 F.3d at 55. It also ruled that the standard of conduct sought to be enforced by the defendants in that case was plainly discernable, and given that ruling, the Court found the risk of recurrence "fairly slight." *Id.* at 56.

Of particular relevance to this case, the *McBryde* court held that any ongoing reputational harm flowing from the expired sanctions did not overcome their mootness. *Id.* at 57.

> At some point, . . . claims of reputational injury can be too vague and unsubstantiated to preserve a case from mootness. Insofar as the one-year and three-year suspensions may have continuing reputational effects on top of the defendants' express reprimand, they are not enough. The legally relevant injury is only the incremental effect of a record of the suspensions (since the fact of the suspensions can no longer be remedied), over and above that caused by the Council's and the Conference's explicit condemnations.

*Id.* (internal citations omitted). The Court emphasized that even if it issued the clear declaration the judge sought in his lawsuit – that the defendants in that case "performed acts reserved by the Constitution to the House and a two-thirds majority of the Senate" – it would not remedy the alleged harm. *Id*. ("We cannot see how this would rehabilitate his reputation.").

With respect to the reprimand, however, the D.C. Circuit held that the harm it inflicted on the plaintiff's reputation was not moot. Unlike the two expired sanctions, it remained in effect, and the ongoing nature of its "explicit condemnations" was distinct from the expired sanctions, for which "[t]he legally relevant injury is *only the incremental effect of a record of the suspensions*." *Id.* at 57 (emphasis added).

> [T]he Supreme Court has strongly suggested, without deciding, that where an effect on reputation is a *collateral* consequence of a challenged sanction, it is insufficient to support standing or, presumably, to escape mootness. In this circuit, when injury to reputation is alleged as a secondary effect of an otherwise moot action, we have required that "some tangible, concrete effect" remain, susceptible to judicial correction. *See Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991).

*McBryde*, 264 F.3d at 57–58 (emphasis in original) (first internal citation omitted) (ruling that the injury to Judge McBryde's reputation preserved the public reprimand from mootness and afforded constitutional standing).

Plaintiff here emphasizes that the challenged finding of misconduct, the examination order, and Review Committee's decision approving them remain publicly available and are part of the historical record. Pl.'s Reply for Mot. to Amend at 9 (analogizing the reprimand in *McBryde* to the 2016 Council Order and the 2017 Review Decision and noting that they remain posted on defendants' websites); *see also* Proposed Am. Compl. ¶¶ 50 and 58. But unlike the reprimand in *McBryde*, which remained in effect, the sanctions the judge chose to challenge in this case have been terminated and no longer have effect. *See* Dismissal Order.

The fact that the Council "expressly left the earlier misconduct findings in place," Proposed Am. Compl. ¶ 55, does not alone overcome mootness because "some tangible, concrete effect . . . susceptible to judicial correction" must be alleged. *See McBryde*, 264 F.3d at 57, quoting *Penthouse Int'l, Ltd.,* 939 F.2d at 1019; *see also Foretich v. United States*, 351 F.3d 1198, 1212 (D.C. Cir. 2003) ("Our case law makes clear that where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible . . . .").

The proposed amended complaint does not allege any ongoing tangible harm to plaintiff or his reputation that continues to flow from the now-terminated misconduct proceedings, beyond whatever vague negative impressions may arise from the fact that the misconduct proceeding took place and sanctions were ordered. *See* Proposed Am. Compl. ¶¶ 56–60. Under the law of this

Circuit, that is not enough to overcome mootness. "In all the cases in which this court . . . has found that the effects of an alleged injury were not eradicated, some tangible, concrete effect, traceable to the injury, and curable by the relief demanded, clearly remained." *Penthouse Int'l, Ltd.*, 939 F.2d at 1018–19 (holding that plaintiff's alleged harm from a retracted government letter that distributors were refusing to carry its magazine despite the retraction was too speculative to overcome mootness), citing *Reeve Aleutian Airways v. United States*, 889 F.2d 1139, 1143 (D.C. Cir. 1989) (the plaintiff continued to suffer a tangible reputational injury even though the government had lifted its suspension on the plaintiff's participation in Department of Defense contracts because the record of the suspension, although lifted, caused a drop in the company's business); *Am. Fed. of Gov't Employees v. Reagan*, 870 F.2d 723, 726 (D.C. Cir. 1989) (the plaintiff continued to face an unfair labor practice suit initiated against it in direct response to an order that had been superseded so "[i]mportant collateral consequences flowing from the [original] order" kept the controversy alive); *Doe v. United States Air Force*, 812 F.2d 738, 740–41 (D.C. Cir. 1987) (the effect of the challenged search by the government was not completely eradicated because the government retained a copy of the seized records, even though it did not intend to use them, and a declaratory judgment would afford the tangible relief of the return of the disputed documents). And even if plaintiff were to prevail in the action, there is no meaningful relief that the Court could grant to dispel the taint of the now dismissed matter.

Since the proposed amended complaint does not allege "some tangible, concrete effect" sufficient to overcome mootness, *McBryde*, 264 F.3d at 57, the Court would still lack jurisdiction to hear the case, and granting the motion to amend would be futile.[4]

## CONCLUSION

For the reasons stated above, and pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court will GRANT defendants' September 19, 2018 motion to dismiss the case as moot [Dkt. # 20], and it will DENY plaintiff's motion to amend [Dkt. # 27] as futile, since the proposed amendment will not overcome the mootness problem. Given the dismissal of the case as moot, the matter will be terminated, and the Court need not take up the original motion to dismiss based on Rules 12(b)(1) and 12(b)(6) [Dkt. # 10]. A separate order will issue.

*[signature: Amy B Jackson]*

AMY BERMAN JACKSON
United States District Judge

DATE:  September 9, 2020

---

4   Defendants' first motion to dismiss raised serious jurisdictional questions, but the Court need not reach them in light of its ruling.  *See* Mot. to Dismiss [Dkt. # 10] (arguing that 28 U.S.C. § 357(c) deprives this Court of jurisdiction over Counts II, V, VI, and VII and that the Court does not have jurisdiction to decide the other counts).

The Court also notes that it is unclear whether plaintiff may use Rule 15 to revive a moribund action, given the ruling that it lacks subject matter jurisdiction on mootness grounds. While leave to amend should be "freely given," Fed. R. Civ. P. 15(a)(2), a plaintiff may not amend a complaint when a court has no subject matter jurisdiction over the case.  *See Lans v. Gateway 2000 Inc.*, 84 F. Supp. 2d 112, 116–17 (D.D.C. 1999), *aff'd* 252 F.3d 1320 (Fed. Cir. 2001) ("[I]f a plaintiff lacks standing to be before the court from the time of the filing of the original complaint, there is no action for him to amend, since the court is deprived of subject matter jurisdiction over the entire matter."); *but see Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.*, 404 U.S. 412, 415 (1972) (the Supreme Court's "usual practice when a case has become moot pending a decision by this Court" is to remand the case to the district court for dismissal, but it remanded that case to allow plaintiffs "to amend their complaint so as to demonstrate that the repealed statute retains some continuing force or to attack the newly enacted legislation").